**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **KANE COMMUNICATIONS, LLC,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **Case No.:**_____ |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **COMPUCOM SYSTEMS, INC.,** | ) | |
| | ) | |
| *Defendant.* | ) | |

---

**PLAINTIFF KANE COMMUNICATIONS, LLC'S**
**ORIGINAL COMPLAINT**

---

COMES NOW Plaintiff, KANE COMMUNICATIONS, LLC ("Kane"), and files its Original Complaint against Defendant, COMPUCOM SYSTEMS, INC. ("CompuCom"). In support thereof, Kane would respectfully show the Court as follows:

## I. JURISDICTION & VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Venue is proper in a judicial district court in and for Dallas County, Texas, pursuant to contractual forum-selection/venue clause identifying the City of Dallas, Dallas County, Texas, as the exclusive forum for determination of all disputes between the parties.

## II. PARTIES

2. Plaintiff, Kane Communications, LLC, is a New Jersey limited liability company with a principal place of business located at 572 Whitehead Road, Ste. 201, Trenton, NJ 08619, and is authorized to transact business and has transacted business in the State of Texas.

3.      Upon information and belief, Defendant, CompuCom Systems, Inc., is a Delaware corporation with a principal place of business located at 8106 Calvin Hill Rd., Fort Mill, South Carolina 29707, and is authorized to transact business and has transacted business in the State of Texas.

### III.    BACKGROUND

4.      This dispute arises out of subcontract work that Kane performed in connection with the "Target – 2022 Store Remodel Install Flights 1-4 Q2108-34922" and "Target – 2022 Flight 5-8 Store Remodels" (collectively, the "Project").

5.      Kane is a full-service technology infrastructure company.

6.      Kane brings this action to recover for unpaid work performed prior to its wrongful termination from the Project.

7.      On or about, March 24, 2017, Kane and CompuCom entered into a Vendor Agreement for the purpose of defining the terms of payment and other operational conditions to govern all current and future activities and responsibilities. A true and correct copy of the Vendor Agreement is attached hereto as Exhibit "A."

8.      Subsequently, on or about October 14, 2021, and April 1, 2022, Kane and CompuCom executed Statements of Work for Target – 2022 Store Remodel Install Flights 1-4 Q2108-34922 and Target – 2022 Flight 5-8 Store Remodels, respectively (collectively, the "SOWs").  A true and correct copy of the SOWs are attached hereto as Exhibit "B."

9.      Pursuant to the SOWs, CompuCom engaged Kane to provide certain project management, cabling, and equipment installation Services to CompuCom's Client, Target Corporation ("Target").

10.     In consideration for the work performed by Kane, CompuCom was required to pay Kane for its work on the Project in accordance with the SOWs.

11.     More specifically, in accordance with Section 8.a. of the SOWs, Kane invoiced CompuCom on a weekly basis as it completed its work.

12.     Under Section 9.d. of the SOWs, CompuCom was obligated to make payment to Kane within 45 days of CompuCom's receipt of Kane's invoice.

13.     Kane completed its work and submitted its invoices to Kane in a timely manner, and pursuant to the terms of the SOWs.

14.     CompuCom received and accepted all labor, materials and services provided by Kane for the Project, yet refused to make payment in full to Kane for same.

15.     Such failure constitutes a material breach of the SOWs and the Vendor Agreement.

16.     In addition to submitting weekly invoices to CompuCom, Kane attempted to obtain payment for its work on the Project on multiple occasions but was unsuccessful.

17.     Consequently, on January 18, 2023, Kane formally placed CompuCom on notice of the outstanding balance, owed to Kane for its work performed on the Project.

18.     The total value of the labor, materials and services provided by Kane to the Project for which Kane has not received payment totals **$490,016.48**, exclusive of interest, penalties and attorneys' fees and expenses.

19.     Pursuant to Section 12.14 of the Vendor Agreement, "The Parties irrevocably consent to the exclusive jurisdiction of the federal and state courts located in Dallas, Dallas County, Texas, and agree that such courts shall be a proper forum for the determination of all Disputes." See Exhibit A, § 12.14.

### IV.    CONDITIONS PRECEDENT

20.     All conditions precedent to filing suit have been satisfied and/or waived.

## V.      CAUSES OF ACTION

### Count I—Breach of Contract

21.     Kane hereby incorporates the foregoing paragraphs of this Complaint, as if set forth at length herein.

22.     CompuCom and Kane entered into both the Vendor Agreement and SOWS relating to the Project, which constitute valid, enforceable contracts. See Exhibits "A" and "B", attached and incorporated herein for all purposes.

23.     Kane fully performed all of its obligations under the Vendor Agreement and the SOWs, including additions and/or revisions thereto, in a workmanlike manner.

24.     CompuCom has failed and/or refused to pay Kane the amounts due and owing for the work it performed on the Project.

25.     CompuCom's failure to honor its obligations to pay Kane constitutes a material breach of both the Vendor Agreement and SOWs.

26.     As a direct and proximate result of CompuCom's material breaches of the Vendor Agreement and the SOWs, Kane has suffered damages in excess of $490,016.48.

### Count II – Unjust Enrichment/Quantum Meruit
### *(In the Alternative)*

27.     Kane hereby incorporates the foregoing paragraphs of this Complaint for this alternative cause of action, as if set forth at length herein.

28.     Kane provided labor and materials on the Project for CompuCom's benefit, fully expecting compensation for such services.

29.     CompuCom has failed and/or refused to pay Kane for the labor and materials used in performing Kane's work on the Project.

30.     CompuCom has enjoyed the benefits of the work performed by Kane.

31.    CompuCom's retention of the benefit of the work performed by Kane, without fully compensating Kane for such work, would be unjust.

32.    The reasonable value of the work performed by Kane on the Project is in excess of $490,016.48.

### Count III – Violation of Texas Prompt Payment Act

33.    Kane hereby incorporates the foregoing paragraphs of this Complaint as if set forth verbatim herein for this additional cause of action.

34.    The Texas Prompt Payment Act (the "Act") provides, among other things, that a contractor who receives payment from the Owner in connection with a contract to improve real property shall pay each of its subcontractors the portion of the owner's payment, including interest, if any, that is attributable to work properly performed or materials suitably stored or specifically fabricated as provided under the contract by that subcontractor, within seven (7) days after the date the contractor receives the Owner's payment. V.T.C.A., Property Code § 28.002(b).

35.    The Act further provides that if payment is not made in a timely manner, the delinquent party shall be liable for the amount of money owed under the contract plus interest at a rate equal to 1.5% per month. V.T.C.A., Property Code § 28.004(b).

36.    The Act further provides that if a civil action is commenced to recover payments under the Act, that the Court may award costs and reasonable attorneys' fees as the Court determines equitable and just. V.T.C.A., Property Code § 28.005(b).

37.    CompuCom is a "Contractor" as that term is defined under the Act. V.T.C.A., Property Code § 28.001.

38.    Kane is a "Subcontractor" as that term is defined under the Act. V.T.C.A., Property Code § 28.001.

39.    Upon information and belief, CompuCom has approved and certified the billing for the work which Kane has performed on the Project.

40.    Pursuant to the SOWs, CompuCom was required to pay Kane within forty-five (45) days of the date of Kane's invoice. See Exhibit B.

41.    CompuCom has withheld payments from Kane, despite the fact that Kane satisfactorily performed the services requested and accepted by CompuCom.

42.    CompuCom has violated the Act and is liable to Kane for the outstanding contract balance in the amount of $490,016.48, plus interest, attorneys' fees, costs, and all other relief provided by the Act.

**Count IV – Suit on Open Account (Common Law)**

43.    Kane hereby incorporates the foregoing paragraphs of this Complaint as if set forth at length herein.

44.    Kane contracted with CompuCom to perform project management, cabling, and equipment installation Services to CompuCom's Client, Target.

45.    The negotiated contractual terms agreed to between Kane and CompuCom and CompuCom provided expressly and/or impliedly that Kane would be compensated for the services it performed for the Project. Therefore, the prices charged by Kane for performance of it services and materials were just, true and correct and charged in accordance with the parties' written agreement(s) and/or are the usual, customary, and reasonable prices for such service and materials.

46.    Kane duly, timely, and properly performed the agreed-upon services on the Project.

47.    Kane sent invoices to CompuCom and duly demanded payment for the services it performed for the Project. No dispute or objection to the work or the invoices was timely raised by CompuCom.

48.    After applying all lawful credits, offsets, and payment, the balance remaining due, owing, and unpaid to Kane on the account is $490,016.48 US.

49.    Despite Kane's due demand for payment, CompuCom has failed and refused to pay Kane the outstanding principal amount of $490,016.48.

## VI.    REQUEST FOR ATTORNEYS' FEES

50.    Plaintiff Kane furthermore seeks recovery of its reasonable and necessary attorneys' fees incurred in connection with prosecuting its claims stated herein as authorized by the parties' written agreement(s) and applicable state law, including, but not limited to, TEX. CIV. PRAC. & REM. CODE § 38.001, *et. seq.* and TEX. PROP. CODE § 28.001 *et. seq.*

**WHEREFORE**, Plaintiff, Kane Communications, LLC, respectfully requests that judgment be entered in its favor, and against Defendant, CompuCom Systems, Inc., for an amount in excess of $490,016.48, plus interest, costs of suit, attorneys' fees, and other such relief as this Court deems just and proper.

Respectfully submitted,

**COKINOS│YOUNG, P.C.**

By: _/s/ R. Anderson Sessions_
    Anderson Sessions
    Texas Bar No. 24090378
    Conor G. Bateman
    Texas Bar No. 24036198
    One Galleria Tower
    13355 Noel Road, Suite 1375
    Dallas, Texas 75240
    Telephone: (817) 635-3600
    Facsimile: (817) 635-3633
    E-Mail: rasessions@cokinoslaw.com
    E-Mail: cbateman@cokinoslaw.com

    **AND**

COHEN, SEGLIAS, PALLAS, GREENHALL
& FURMAN, P.C.

By:  */s/ Shawn R. Farrell*
   Shawn R. Farrell
   PA State Bar No. 76738
   (*Pro Hac Vice*, forthcoming)
   Tiffany R. Marini
   PA State Bar No. 320693
   (*Pro Hac Vice*, forthcoming)
   1600 Market St., 32nd Floor
   Philadelphia, PA 19103
   P: (215) 564-1700
   F: (215) 564-3066
   E-Mail: sfarrell@cohenseglias.com
   E-Mail: tmarini@cohenseglias.com

**COUNSEL FOR PLAINTIFF
KANE COMMUNICATIONS, LLC**

# Exhibit A

# CompuCom.

# Vendor Agreement

| | |
|---|---|
| **CompuCom Systems, Inc.**<br>**8383 Dominion Pkwy.**<br>**Plano, Texas 75024**<br><br>**Attn:** Legal Department | **Vendor Name:** Kane Communications _____<br>**Address:** 572 Whitehead Road  Ste 201 _____<br>**City/State/Zip:** Trenton, NJ 08619 _____<br>**Attn:** Angelo Romeo _____ |
| **CompuCom Authorized Signature:**<br>**By:** *Kristin S. Houston*<br>────────5D34B24AEF1F41A...<br>**Name:**  Kristin S. Houston<br>**Title:**  Attorney<br>**Signature Date:**  3/31/2017 | **Vendor Authorized Signature:**<br><br>**By:** *(signature)*<br>**Name:** Steven E. Demcsak _____<br>**Title:** Senior Vice President _____<br>**Signature Date:** 3/24/2017 _____ |

This Vendor Agreement (the "**Agreement**") dated _03/24/2017_____ [Insert Date] (the "**Effective Date**") is entered into by and between CompuCom Systems, Inc. ("**CompuCom**") and the above-named vendor ("**Vendor**") (collectively, the "**Parties**" and each, a "**Party**").

NOW, THEREFORE, in consideration of the mutual agreements contained herein, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

1. **Definitions**.

1.1. "**Client**" new and existing end user customers with whom CompuCom has, or may enter into, agreements for the provision of certain services.

1.2. "**Deliverable**" means (a) a tangible or intangible object produced as a result of the Services provided under a SOW including, but not limited to, the materials and other deliverables described therein; and (b) anything defined as a Deliverable in the applicable SOW.

1.3. "**Developed Materials**" means (a) all tangible output of the Services (whether patentable or not); (b) any other materials, products (including software object code and source code), inventions or other work product; and (c) any modifications, enhancements, derivative works of, and any Intellectual Property embodied in, all of the foregoing, which are developed by or on behalf of Vendor in connection with or as part of any Services.

1.4. "**Intellectual Property**" means all intellectual and proprietary rights of any kind and arising under any applicable law including, without limitation, patents, trade secrets, copyrights, trademarks, trade names, service marks, logos, moral rights, publicity rights and domain names, all of which may be continually under further development, modification, and improvement.

1.5. "**Master Statements of Work**" or "**MSOW**" means a document attached to this Agreement which outlines the additional rights and obligations of the Parties regarding the specific services and/or product purchase types authorized therein.

1.6. "**Non-Public Personal Information**" means nonpublic or personally identifiable information about employees or other individuals regardless of the form or manner of disclosure.

1.7. "**Prime Contract**" means the agreement under which CompuCom provides services to its Client.

1.8. "**Prior Work**" means any Intellectual Property (a) owned by Vendor prior to the Effective Date; or (b) owned by Vendor subsequent to the Effective Date, but (i) acquired by Vendor contemporaneous with and wholly independent to the performance of Services under this Agreement and (ii) not created, developed, or derived by Vendor from any knowledge acquired by or through the performance of any Services.

1.9. "**Product(s)**" mean the materials, items, products or components thereof, including, but not limited to, computer hardware products, software licenses, whether or not manufactured or licensed by Vendor a third party set forth in a SOW or a Purchase Order.

1.10. "**Project Change Request**" or "**PCR**" means the document that notifies Vendor of CompuCom's request for a change in scope of Services or pricing as outlined in the individual SOWs.

1.11. "**Purchase Order**" or "**PO**" means the document containing CompuCom's request for Product and/or Services from the Vendor that is incorporated into and governed by this Agreement and any applicable MSOW(s) and SOW(s).

1.12. "**Representatives**" means a Parties officers, directors, agents, representatives, employees or subcontractors.

1.13. "**Services**" mean (a) the specific services described in the applicable Statement of Work including the provision of all Deliverables described therein and (b) any services, functions, or responsibilities not specifically described in a SOW, but that are nevertheless inherent in the proper provision Services and/or Deliverables described in the applicable SOW.

1.14. "**Statement of Work**" or "**SOW**" means a document attached to and governed by an applicable MSOW and this Agreement.

1.15. "**Vendor Personnel**" means Vendor's employees, agents, and approved subcontractor's.

2. **Payment**.

© 2016 CompuCom Systems, Inc. All Rights Reserved<br>This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

2.1. Unless otherwise indicated herein, CompuCom shall pay Vendor according to the payment terms set forth in the applicable MSOW and its associated SOWs. All amounts are due and payable in U.S. dollars, unless otherwise agreed by CompuCom in writing, within ninety (90) days from the date on which CompuCom receives a correct invoice from Vendor that includes the valid and approved PO number applicable to each charge.

2.2. Invoicing. Vendor will provide invoices via EDI 810 or via e-mail to accountspayable@compucom.com on an Excel spreadsheet in a format and template specified by CompuCom. Invoices submitted without a valid PO number will not be honored for payment and will be rejected by CompuCom. Where CompuCom has rejected an invoice for failure to include a valid PO number, it is Vendor's responsibility to resubmit a correct invoice.

2.3. Payment Method. Payments are made via credit card, automated clearing house (ACH), or other method as determined in CompuCom's sole discretion. Vendor will select an available settlement option to process credit card payments.

3. Term; Termination.

3.1. This Agreement. The term of this Agreement begins on the Effective Date and shall continue in full force and effect thereafter unless and until terminated in accordance with the provisions of this Agreement.

3.1.1. CompuCom's Right to Terminate Agreement. CompuCom may terminate this Agreement: (a) for convenience at any time upon thirty (30) days prior written notice; (b) if Vendor materially breaches its obligations under this Agreement and does not cure such breach within thirty (30) days after Vendor's receipt of written notice thereof; or (c) or immediately upon notice if Vendor fails to conduct business in the normal course, becomes insolvent, makes a general assignment for the benefit of creditors, suffers or permits the appointment of a receiver for its business or assets, or avails itself of or becomes subject to any proceeding under any bankruptcy laws relating to insolvency or protection from creditors.

3.1.2. Vendor's Right to Terminate Agreement. Vendor may terminate this Agreement (a) for convenience at any time upon thirty (30) days prior written notice; or (b) for a material breach by CompuCom of its obligations hereunder if such breach is not cured within thirty (30) days after CompuCom's receipt of written notice thereof; provided however, that Vendor may not terminate this Agreement until such time as all Services set forth in all outstanding SOWs have been completed in accordance with the terms of such SOWs.

3.1.3. Effect of Agreement Termination. Upon termination of this Agreement, all outstanding SOWs shall continue in effect according to their terms unless earlier terminated as provided in that particular SOW or its governing MSOW.

3.2. Master Statements of Work. Each MSOW will commence and expire on the dates specified in such MSOWs and each Party's right to terminate any MSOW shall be as set forth in the particular MSOW.

3.3. Statements of Work. Each SOW will commence and expire on the dates specified in such SOWs and each Party's right to terminate any SOW shall be as set forth in the particular SOW.

4. Confidential Information. With respect to all information and data (whether in written, electronic, digital or oral format), including but not limited to Non-Public Personal Information, communicated to Vendor by CompuCom or Clients, or which Vendor obtains or has access to in the performance of its obligations hereunder, whether before or after the Effective Date, including without limitation, the terms of this Agreement ("Confidential Information"), Vendor shall: (a) maintain such Confidential Information in strict confidence and protect it in the same manner that Vendor uses to protect the confidentiality of its own confidential information, which shall be no less than reasonable care; (b) use Confidential Information only for purposes of this Agreement; (c) return or destroy Confidential Information, at the completion of the

Services or on Agreement termination; (d) disclose Confidential Information only to its Representatives who have a need to know such Confidential Information for purposes of this Agreement; and (e) prior to disclosing Confidential Information to its Representatives, require each such Representative to sign a non-disclosure agreement which, at a minimum, is equivalent to the provisions of this Section. If any Confidential Information is required to be disclosed pursuant to court order, subpoena or governmental regulation, Vendor shall promptly notify CompuCom prior to disclosing such Confidential Information and provide reasonable assistance to CompuCom, at CompuCom's expense, in any lawful efforts by CompuCom to resist or limit the disclosure of such Confidential Information, unless prohibited by the terms of the foregoing legal requirement.

5. Public Disclosure; Advertising and Trademarks. Other than as expressly set forth in a particular MSOW or SOW, nothing contained in this Agreement is intended to, or shall be construed to, grant either Party any license or right regarding the other Party's Intellectual Property. Neither Party shall use the other Party's trademarks, trade names, service marks or logos ("Marks") or directly or indirectly refer to the other Party (or any Client, including any Client's Marks) in any media release, public announcement or public disclosure relating to this Agreement including any promotional or marketing materials, Client lists or business presentations, without the prior written consent of the other Party or such Client, as applicable.

6. Warranties.

6.1. Service Warranties. Vendor warrants that for all Services provided hereunder: (a) the Services will be professional quality and will be performed in a good and workmanlike manner; (b) the Services will conform to generally accepted standards for such Services in the industry and to the requirements specified in the applicable MSOW(s) and SOW(s); (c) Vendor Personnel shall be competent and qualified to perform the tasks to which they are assigned; (d) Vendor owns or has obtained all rights and licenses required from third parties to provide the Services; and (e) any Intellectual Property provided as part of the Services including, without limitation, Prior Work and Developed Materials, shall not infringe or misappropriate the intellectual property rights of any third party. In the event of any breach of the foregoing warranties, Vendor, at its sole expense and without delay, shall re-perform the non-conforming Services to the satisfaction of CompuCom and Client (if applicable) or, in the case of infringement or misappropriation, remedy such matter to CompuCom's reasonable satisfaction in addition to Vendor's obligations under Section 8 below.

6.2. Product Warranties. Vendor warrants that for all Products provided hereunder: (a) all Products delivered hereunder are new, merchantable, conform to accepted commercial standards and applicable regulations, and are fit for their ordinary purpose; (b) all Products delivered hereunder are free from defects in design, material and in workmanship; (c) Vendor has good title to the Products and has conveyed such good title to CompuCom, pursuant to the terms and conditions of this Agreement and applicable MSOW and SOW; (4) the Products purchased hereunder conform to applicable specifications, drawings, samples or other description referenced in the SOW or on the face of the PO; and (5) the Products purchased hereunder will be suitable for the purposes for which intended if such purposes were made known to Vendor.

6.3. THE FOREGOING WARRANTIES REPLACE ALL OTHER WARRANTIES, EXPRESS OR IMPLIED INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

7. Independent Contractor. CompuCom and Vendor agree that Vendor is, and shall remain, at all times, an independent contractor. Nothing in this Agreement shall be construed to create any other relationship or imply that either Party is an employee, agent, representative, partner or joint venturer of the other Party. At no time

© 2016 CompuCom Systems, Inc. All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

shall either Party make, or have the authority to make, any commitments or incur any expenses for, or in the name of, the other Party without the prior written consent of the other Party. Vendor Personnel are not, nor shall they be deemed to be at any time during the term of this Agreement, employees of CompuCom. Vendor has, and at all times shall, retain full responsibility for the actions and omissions of its Vendor Personnel and shall be responsible for their supervision, daily direction and control.  Vendor will be solely responsible for payment of all compensation (including withholding of income taxes and Social Security) and benefits of any kind whatsoever including, but not limited to, workers' compensation and disability, owed to Vendor Personnel.  Notwithstanding anything to the contrary, nothing in this Agreement grants, or shall be construed to grant, Vendor or any Vendor Personnel any right or interest under any CompuCom employee benefit plan.

8.    Indemnification. Vendor will indemnify, defend (at CompuCom's request) and hold CompuCom, Clients, and their respective Representatives harmless from any and all claims or demands (including all losses, damages, and liabilities resulting from such claims or demands, and all related costs and expenses, including reasonable attorney's fees and expenses) ("Claims") arising from or in connection with (a) Vendor's performance of, or failure to perform, any of its obligations under this Agreement, applicable MSOW or SOW; (b) an act or omission of Vendor in its relationship with its Representatives or suppliers; (c) breach of any of Vendor's representations or warranties under this Agreement; (d) personal injury, death or property damage occasioned in whole or in part by the acts or omissions of CompuCom, Vendor, or their respective Representatives; (e) any actual or alleged infringement or misappropriation of any intellectual property rights associated with the Services, Deliverables, Prior Work, Developed Materials or other items provided by or through Vendor in connection with this Agreement, applicable MSOW or SOW; or (f) any and all claims by Vendor's Representatives including, but not limited to all actions, claims, demands, causes of action, complaints, EEOC or state equivalent charges, and liabilities of any name and nature.  The indemnification and hold harmless obligations under this Section 8 shall not be limited in any way by limitations on the amount or type of damages, compensation or benefits payable by Vendor or its Representatives under workers' compensation laws, disability benefits laws or other employee benefit laws.

9.    Limitation on Liability.

9.1.    EXCEPT AS SET FORTH IN SECTION 9.2 BELOW, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY SPECIAL, INDIRECT, OR CONSEQUENTIAL DAMAGES INCLUDING, WITHOUT LIMITATION, LOST BUSINESS, PROFITS, DATA OR USE OF PRODUCTS, WHETHER FORESEEABLE OR NOT, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9.2.    THE LIMITATION IN SECTION 9.1 ABOVE SHALL NOT APPLY TO VENDOR'S OBLIGATIONS UNDER: (a) SECTION 4 (CONFIDENTIAL INFORMATION); OR (b) SECTION 8 (INDEMNIFICATION).

10.    Representations and Warranties.

10.1.    Authority.  Each Party represents and warrants that it has the authority to enter into and perform this Agreement.

10.2.    No Conflict.  Each Party represents and warrants that it is under no obligation or restriction, nor will it assume any such obligation or restriction, that does or would in any way interfere or conflict with or that does or would present a conflict of interest concerning the obligations to be performed under this Agreement.

11.    Covenants.

11.1.    Compliance with Laws.  Vendor, at its own expense, shall comply with all applicable foreign, federal, state, county and local laws,

ordinances, rules and regulations in the performance of its obligations hereunder (which are now or may become applicable to the transactions covered by this Agreement) including, but not limited to any import/export control regulations, the Equal Employment Opportunity/Affirmative Action laws which are incorporated herein by reference including but not limited to the Equal Opportunity Clause – EO 11246-41 CFR 60-1.4(a); Section 503 – 41 CFR 60-741.5(a); and VEVRAA – 41 CFR 60-300.5(a), and Vendor is also responsible for the procurement of any necessary permits and licenses.

11.2.    Records; Taxes.  Vendor shall maintain books and records relating to performance under this Agreement in accordance with generally accepted accounting principles to, among other things, substantiate all invoices submitted to CompuCom.  Such records shall be made available to CompuCom or its Representatives, upon ten (10) days prior written notice, during normal business hours for any reason, to perform audits of Vendor's facilities, operations and records, and will include, at a minimum, the ability to examine and copy payroll records, expense accounts, attendance cards and job summaries.  Should an audit reveal that Vendor has overcharged CompuCom, whether intentionally or inadvertently, then Vendor shall immediately refund to CompuCom in the amount of the overcharge.  In the event of an overcharge in excess of ten percent (10%) of the amounts due CompuCom hereunder, then, in addition to the identified overcharge amount, Vendor shall reimburse CompuCom for the reasonable cost of the audit.  Vendor shall maintain such records for three (3) years from the date of final payment for Services rendered hereunder.  When appropriate, CompuCom shall provide sales/use tax exemption numbers to Vendor on a timely basis.

11.3.    Further Assurances.  The Parties agree (a) to furnish upon request to each other such further information; (b) to execute and deliver to each other such other documents; and (c) to do such other acts and things, all as the other Party may reasonably request for the purpose of carrying out the intent of this Agreement.

12.    Miscellaneous.

12.1.    Entire Agreement.  This Agreement, together with any MSOWs, SOWs, exhibits, and schedules hereto, contain the entire understanding of the Parties with respect to the matters contained herein. There are no promises, covenants or undertakings (oral or written) other than those expressly set forth herein.  This Agreement supersedes and replaces in its entirety any and all other prior and contemporaneous agreements and understandings, whether oral, written or implied, if any, between the Parties with respect to the subject matter hereof.

12.2.    Survival.  In the event of the expiration or termination of this Agreement, the following provisions shall survive and continue in effect: Section 4 (Confidential Information), Section 8 (Indemnification), Section 9 (Limitation on Liability), this Section 12.2 (Survival) and provisions which by their nature contain continuing obligations.

12.3.    Amendments.  This Agreement may be amended only by a written instrument duly executed by authorized representatives of both Parties.

12.4.    Assignment; Successors.  Neither Party shall assign this Agreement or any of its rights hereunder, or delegate any of its duties hereunder without the prior written consent of the other Party; provided, however, that CompuCom may assign this Agreement or any of its rights hereunder, or delegate any of its duties hereunder to an affiliate without the consent of Vendor; provided, further, that nothing herein shall be construed to prevent CompuCom from disposing of substantially all of its assets.  Any attempted assignment or delegation not expressly permitted by the immediately preceding sentence shall be void and of no force and effect.  This Agreement shall inure to the benefit of and be binding upon the Parties and their permitted successors, assigns, heirs and legal representatives. All claims for monies due to or that become due from CompuCom shall be subject to deduction by CompuCom for any setoff or counter-claim arising out of

© 2016 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

this or any other of CompuCom's agreements with Vendor, whether such setoff or counter-claim arose before or after such assignment by Vendor.

**12.5.  Notices.** All notices, requests, authorizations, consents, waivers, and other communications under this Agreement: (a) must be in writing and delivered with written confirmation of receipt (i) by hand or (ii) by a nationally recognized overnight delivery service, in each case to the appropriate addresses set forth in the signature block above (or to such other addresses as a Party may designate by written notice to the other Party); and (b) are effective upon receipt.

**12.6.  No Third Party Beneficiaries.** It is the Parties' express intent that this Agreement is not, and shall not be construed as, a third-party beneficiary contract.

**12.7.  Order of Precedence.**

In the event of a conflict, ambiguity, or inconsistency between the provisions of this Agreement, an MSOW, a SOW, including its Exhibits or Schedules, a PCR and PO, the order of precedence shall be:

**12.7.1**  As between the provisions of this Agreement and the MSOW, the Agreement shall prevail unless the MSOW expressly amends the terms of the Agreement as to that provisions.

**12.7.2**  As between the provisions of the MSOW and the SOW, the MSOW shall prevail unless the SOW expressly amends the terms of the MSOW as to that provision.

**12.7.3**  As between the provisions of the SOW and the PCR, the PCR shall prevail.

**12.7.4**  The Agreement, MSOW, SOW, and PCR shall take precedence over a PO.

**12.8.  Severability.** If any provision of this Agreement or the application of any such provision to any person, entity or circumstance shall be declared judicially to be invalid, unenforceable or void, such decision shall not have the effect of invalidating or voiding any portion of the remainder of this Agreement, it being the intent and agreement of the Parties that this Agreement shall be deemed amended by modifying such provision to the extent necessary to render it valid, legal and enforceable while preserving its intent or, if such modification is not possible, by substituting therefor another provision that is valid, legal and enforceable and that achieves the same objective.

**12.9.  Waiver; Remedies.** No delay or failure by either Party to exercise or enforce at any time any right or provision of this Agreement shall be considered a waiver thereof or of such Party's right thereafter to exercise or enforce each and every right and provision of this Agreement. A waiver, to be valid, shall be in writing, but need not be supported by consideration. A valid waiver of any provision of this Agreement with respect to a particular situation or event shall not constitute a waiver of such provision with respect to other situations or events. The Parties shall have any and all remedies available to them, whether at law or in equity, and all remedies expressly available under the terms of this Agreement shall be cumulative.

**12.10. Force Majeure.** Neither Party shall be considered in default for any delay or failure in performance hereunder caused in whole or in part by fires, strikes, floods, embargoes, labor disputes, acts of terrorism or sabotage, quarantine restrictions, insurrection, riots, acts of God, or other similar causes beyond such Party's control and without the fault or negligence of such Party, provided the non-performing Party notifies the other Party within fifteen (15) calendar days of the occurrence and provided further that the non-performing Party uses reasonable efforts to avoid or remove such causes of nonperformance and continues performance hereunder with reasonable dispatch when such causes are removed.

**12.11. Attorney's Fees and Expenses.** Except as otherwise provided herein, in any claim or dispute between the Parties under this Agreement, the prevailing Party will be entitled to an award by the arbitrators or the court, as the case may be, of attorneys' fees and related costs and expenses. Except as otherwise provided herein, if neither Party is deemed to have substantially prevailed, then attorney's fees, costs and expenses shall be awarded by the arbitrators or the court as may be determined to be just under all the circumstances.

**12.12. Equitable Relief.** Due to the unique and proprietary nature of the Confidential Information and Intellectual Property, both Parties agree (solely for the purposes of this Section) that, in the event of a breach by Vendor of its obligations under Section 4 (Confidential Information), Section 5 (Public Disclosure; Advertising and Trademarks) and Section 11 (Covenants) and any Additional Covenants agreed to in an MSOW or SOW, CompuCom will suffer irreparable injury for which money damages would be inadequate and that CompuCom will therefore be entitled to injunctive relief (including without limitation specific performance) without the necessity of proving irreparable injury or the inadequacy of money damages, in addition to any other remedies provided under this Agreement or available at law or in equity.

**12.13. Non-Exclusivity.** Nothing in this Agreement shall prevent (a) CompuCom from obtaining any type of services, including the Services, from itself or any other provider during the term of this Agreement, or (b) Vendor from providing such Services to third parties during the term of this Agreement except as prohibited in an applicable MSOW or SOW.

**12.14. Governing Law; Selection of Forum.** This Agreement and all disputes and suits directly or indirectly related thereto ("**Disputes**"), shall be construed and interpreted in accordance with, and the rights of the Parties will be governed by, the substantive laws of the State of Texas without giving effect to any choice-of-law rules that may require the application of the laws of another jurisdiction. The Parties irrevocably consent to the exclusive jurisdiction of the federal and state courts located in Dallas, Dallas County, Texas, and agree that such courts shall be a proper forum for the determination of all Disputes.

**12.15. Counterparts.** This Agreement may be executed in multiple counterparts (including by email or facsimile transmission), each of which shall constitute an original and all of which, when taken together, shall constitute one and the same agreement.

The remainder of this page is intentionally blank.

© 2016 CompuCom Systems, Inc. All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

# Exhibit B

**CompuCom®**

**Subcontractor
Statement of Work**

**Statement of Work
Target 2022 Flight 1-4 Store Remodels**

This Statement of Work ("**SOW**"), effective as of October 14, 2021 ("**SOW Effective Date**"), is between CompuCom Systems, Inc. ("**CompuCom**") and Kane Communications LLC. ("**Vendor**"). This Statement of Work incorporates by reference the terms and conditions of the Subcontractor Master Agreement between Vendor and CompuCom dated April 3, 2017 ("**Agreement**").

.

**Vendor Contact:**

|  |  |
|---|---|
|  | Melissa Kane |
| **Telephone Number:** | 609-586-8800 x303 |
| **E-mail Address:** | MKane@kanecomm.com |
| **Fax Number:** | |

**1. Overview**

CompuCom has engaged Vendor to provide project management, cabling, and equipment installation Services to CompuCom's Client, Target Corporation ("Client" or "Target") as further described herein.

**2. Projected Term of SOW**

    **a.** <u>Services Commencement Date:</u> <u>On or around October 14, 2021</u>

    **b.** <u>Project Completion Date:</u> <u>On or around July 31, 2022</u>

    **c.** The mobilization date and the turnover/completion date may be adjusted, either forward or backward, depending on the project's sequence and schedule. CompuCom will promptly notify Vendor of changes regarding store makeup and/or schedule changes.

**3. Project Sites; Hours**

    **a.** <u>Sites.</u> Vendor will provide the Services described in this SOW for each of the Target store locations listed in Attachment B (each a "Site") which may be amended by CompuCom from time to time during the term of this SOW. Vendor commits to providing the Services at any or all of the Sites listed in Attachment B; however, CompuCom is not required to engage Vendor to provide Services for any or all such Sites. Vendor acknowledges and agrees that any volume or quantity forecasts provided to Vendor by CompuCom beyond the Sites listed in Attachment B are estimates and projections only and are not binding on CompuCom.

    **b.** <u>Hours.</u> Vendor will work within the guidelines of Target's general contractor ("General Contractor" or "GC") with regard to working hours, check-in and check-out times. Services will be performed first, second or third shift as required to meet the project needs. Generally, Services will be performed 10:00 p.m. to 7:00 a.m. local time, Sunday through Thursday, excluding Holidays (New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day).

**4. Vendor Services and Deliverables**

    **a.** Vendor is required to attend the kick off meetings at each construction site with the Target Owners Site Representative ("OSR") and General Contractor ("GC").

    **b.** Vendor shall attend weekly construction meetings and manage the two (2) week look ahead reporting to confirm that site visits are scheduled on time in accordance with dependent third party construction activities.

    **c.** Communicate and work with the OSR, GC and CompuCom PM -Remodel which may include:

        **i.** Vendor representative must attend all weekly construction meetings in person. Format of the meeting will be mutually agreed to by the OSR, GC, and Vendor Project Manager. Failure to report to the weekly meeting will have a $500 per week credit given to CompuCom Systems applied to Invoices.

© 2021 CompuCom Systems, Inc. All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom.**

**Subcontractor
Statement of Work**

    ii.    Vendor shall work with the GC and OSR to obtain the site-specific sequence schedule.

**d.**    Provide status/progress reports to CompuCom. Each status report will be required daily and delivered in an electronic format.

**e.**    Vendor will be required to attend status meetings as scheduled by the CompuCom PM as needed.

**f.**    Vendor will communicate to CompuCom PM any missing information that inhibits the completion of the work as soon as Vendor becomes aware of the same.

**g.**    Provide conduit and entry cable status as modifications are discovered. Vendor should escalate any discrepancies from the conduit plans to the CompuCom PM's attention and to help identify appropriate actions to be performed and the responsible party.

**h.**    Provide additional installers as necessary to meet agreed-to deadlines and minimize delays with prior approval from the CompuCom PM.  Manage incidents causing damage to stored or installed cable systems materials.  This includes:

    i.    Vendor PM will create a Change Order ("CO") indicating the scope of work, cost and responsible party (if known) for incidents requiring Vendor to correct cabling work that is damaged other than by Vendor.

    ii.    If damage is caused by Vendor, Vendor will repair and recover at no additional cost.

    iii.    Route CO to the CompuCom PM.

    iv.    The CompuCom PM will review and obtain the requisite approvals for the CO and advise the OSR to recover the associated costs from the responsible vendor.

**i.**    Submit cable test results, using Fluke tester, or CompuCom approved tester, to CompuCom for Leviton warranty information to obtain lifetime cable warranty.

**j.**    Vendor PM will provide a schedule for the pre-mobilization and mobilization visits and report observations to the CompuCom PM and Target OSR.

**k.**    Vendor PM will notify CompuCom to request all move add change orders (MAC) for hardware that is lost/stolen or not shipped to the Site.

**l.**    Each Vendor PM is required to have a laptop to travel with and will respond to emails/CompuCom requests in a timely fashion. Vendor PMs will have a "hot spot" with Wi-Fi accessibility. A cell phone is not considered adequate.  A $500 credit per PM trip violation will be incurred by Vendor not meeting this standard.

**m.**    Except for Lifts CompuCom will provide, Vendor to provide one hundred percent (100%) of the required tools and equipment to complete the Services.

**n.**    <u>Perform the following material handling responsibilities:</u>

    i.    Vendor will be responsible for all equipment once Vendor has taken possession of the equipment at the Vendor facility.

    ii.    Perform an inventory of the equipment.

        1.    The Vendor will locate and perform a box count of equipment received at the Site to be installed and update received quantities in Smartsheets.

        2.    Any subsequent shipments of equipment received at the Site will be box counted by the end of the next business day following notification of shipment arrival.

        3.    Vendor to meet shipments and document any damage caused by the carrier in transit.

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom.**

**Subcontractor
Statement of Work**

> 4.  Vendor must provide a complete inventory check within 48 hours of each shipment received.  Failure to complete this task will result in a $100.00 credit to CompuCom, daily after the initial 48 hours,  until the inventory checklist is 100% complete.

iii.  Immediately notify the CompuCom PM of any packing list discrepancies for CompuCom and Target purchased equipment on the same day the equipment is received by Vendor.

iv.  Verify packing lists, store, and manage all equipment addressed to Vendor that is shipped to the construction site by Target and CompuCom vendors.

v.  Arrange for secure storage of all Vendor Project material and equipment with the OSR or the Construction Contractor Superintendent.  If required, CompuCom will arrange to provide secure storage.  The Control room CANNOT be used for secure storage or storage of any equipment.

vi.  At the end of each working day, all TTS equipment & materials will be stored in the secure storage area.

vii.  For Device(s) that is Out of Box Failure ("OBF") the Vendor shall contact the CompuCom PM for the Target specified process.

> a.  Any OBF must be returned as specified by Target.  For any OBF Devices not returned, Vendor will be responsible for the replacement cost of a new Device.  For OBF Devices returned and found not defective, Vendor will not bill for the return visit to the Assigned Store to install the replacement Device, and will be responsible for shipping cost of the replacement new Device to the Assigned Store.
>
> > i.  For items returned and found not defective, Vendor will not bill for return visit, and will be responsible for shipping of new device.

viii.  RF and TVS cutsheets.  CompuCom will be responsible for supplying Vendor with each stores' current RF and Voice Devices.

**o.  Vendor Installation Responsibilities:**

i.  Vendor will support cabling requirements of this project with Cabling qualified technicians, in accordance with Target cabling standards.

> 1.  Assigned duties of the lead technician may not be tiered or split between two different stores. The lead technician, and supporting technicians will stay the same throughout the project, unless circumstances arise that can not be resolved in another manner, other then swapping a technician
>
> 2.  Project work will be performed after hours Sunday – Thursday nights.

ii.  Voice/Data/TVS cables.  As each Site requires, provide/install voice/data/TVS station cables at and between the IDF or the Control Room/Main Distribution Frame ("MDF") and:

> 1.  Point of Sale ("POS") terminal locations
> 2.  Food Scales
> 3.  Self-Check Out ("SCO") terminals
> 4.  Local Area Network ("LAN") device locations
> 5.  Leased (Optical, Pharmacy)
> 6.  Non-Leased spaces (Food Ave, Starbucks, Adult Beverage etc.)
> 7.  Analog and digital telephones
> 8.  Kiosks, workstations and printers
> 9.  Mini-assistance centers (MACs)
> 10.  Wiring for access points
> 11.  Access Point Hardware Refresh

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom.®**

**Subcontractor
Statement of Work**

12. Time clock locations
13. TVS cable system
14. ISDM cable digital media player (e.g. TV wall or valley, Disney, video game endcap, beauty, front of store and growler station)
15. Miscellaneous telephone cables
16. IDF moves and switch additions and upgrades as needed
17. MDF switch additions and upgrades as needed
18. RG6 cable lounge TV connection to antenna
19. In-store music speaker cabling and install
20. Providing network cable drops for EAS Pedestal door towers and (Order Pickup) OPU door.
21. Provide cabling for Cash Recycler as needed
22. District Group Regional Office Decommissioning

iii.   If IDF move is required and existing fiber will not reach, install and label a four (4) strand fiber cable and the termination equipment for the Ethernet switch interconnections and the termination equipment between the Control Room and the remote switch.

1.   As each Site requires, provide and install the required riser cables for the voice backbone between the MDF and the IDFs.

2.   Install the voice and data locations as defined on the mutually agreed upon CAD prints.

3.   Install the other mutually agreed upon voice/data devices as defined on the fixture, electrical and telecommunications CAD prints.

4.   Label all newly installed cables, termination panels, wall plates, and outlets using Target standards as provided by the CompuCom PM prior to the cabling start date.

5.   All voice and data cable infrastructure in the store environment will be installed in accordance with the specifications currently defined in the Remodel LV Cabling Manual (to be provided by CompuCom). The Target Network Services LAN team must approve any deviations from this standard. Vendor will be responsible for all wiring work to be compliant with all applicable codes and will use the standards documents identified in the Remodel LV Cable Manual as guidelines for the completion of the work.

6.   Vendor will review all specified IDF locations and cable pathways to confirm compliance with all applicable codes, standards, and general contractor's electrical installation plan. All deviations will be communicated prior to mobilization start date or upon discovery to the CompuCom PM and LAN Engineering team to drive timely resolution.

7.   Vendor shall work with Target to define TVS conversion activity schedule per the store sequence schedule. Target Rollout Room will be available during TVS conversion activities. For all other TVS project work, Vendor will plan and schedule appropriately all remaining project work in cooperation with Target and the CompuCom PM.

8.   Mood Music hardware installation per the provided print with integration to each store's PA system.

9.   Destination Beauty shielded white or gray cable installation per the print. White is the preference color.

   a.   Notify CompuCom PM if scheduling is required for front lane scales or Mettler scales calibration, (weights and measures), two weeks in advance of the device move.

   b.   Equipment racks

      i.     As each Site requires, provide and install in the MDF racks at each Site.
      ii.    Removal of old unused equipment from MDF rack
      iii.   Follow device power security standards in MDF rack.
      iv.    Cleanup all patch cables to acceptable standards.

© 2021 CompuCom Systems, Inc. All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**Subcontractor
Statement of Work**

  v. As each Site requires, provide and install at each IDF a single wall mounted rack, unless determined specified site needs require a Sales Floor IDF Cabinet**.** Vendor is responsible for identification of the need for the Sales Floor IDF Cabinet and will coordinate with the Target Deployment team to create an IDF move with the Architect and Engineer.

10. All net new cabling will be installed with Cat6a. All temp cables will be Cat5e.

11. If existing Devices are re-locating and require a new cable run, it must be Cat6a.

12. If patch panels are 110 style patch panels, Cat6a cable will be punched down to panel. Test cable to Cat6a standards. If patch panels are modular, replace jack with Cat6a and terminate. Test cable to Cat6a standards.

13. Proper scrubbing and disposition process for all hardware vendor will be removing as per scope of the store. Switches, POS registers, Workstations, cameras, etc.

14. Removal of old speaker and horns from the sales floor once the MOOD systems have been integrated with the paging system.

15. Telephone
 a. As each Site requires, provide, install, label, patch, and test the analog telephones as defined in the Voice and Data Cable Systems Manual.
 b. As each Site requires, provide and install analog telephone patch cords and a telephone line and handset cords.
 c. As each Site requires, place the IP telephones as defined in the Voice and Data Cable Systems Manual.

16. Telephone Circuit Verification
 a. As each Site requires, Vendor will conduct telephone circuit verification as defined in the Voice and Data Cable Systems Manual.

17. Paging System
 a. Provide, install, and modify as defined for each Site's project scope of work in accordance with the CompuCom provided Music Install manual

18. Additional Work as Assigned
 a. During the course of the Site completion window, there may be additional work requested of the technician. To the extent the technician is qualified to perform the additional scope of work, Vendor will complete the requested work as in scope work.

**p.** **Project Management Services.**

i. <u>Vendor Project Manager</u>. Vendor will identify an individual from its organization to serve as Vendor's Project Manager. The Vendor Project Manager will serve as the principal contact with CompuCom and will be responsible for responding to all requests and providing all other information required by the CompuCom Project Manager.

ii. <u>Lead Installer</u>. Vendor will designate a minimum of one (1) on-Site representative per Site as a Lead Installer, who shall be accessible via cellphone at all times while on Site.  Vendor shall furnish the Lead Installer's name, cellphone number and email address to the CompuCom Project Manager prior to the start of Services.

**q.** **Permits**

i. <u>Permits.</u> Vendor is responsible for obtaining all appropriate permits prior to commencement of Services, including but not limited to low voltage cabling permits.  Vendor shall transmit a copy of such permits to the CompuCom PM and shall carry proof of such permits while on Site.

**r.** **Status Updates**

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom.**

**Subcontractor
Statement of Work**

    i.    Vendor will contact CompuCom PM at agreed upon intervals (typically weekly and provide a status/progress report

    ii.    Vendor will update Smartsheets in a timely manner listing tasks completed and switch port information

    iii.    Vendor representative must attend all weekly construction meetings in person. Format of the meeting will be mutually agreed to by the OSR, GC and Vendor Project Manager. Failure to report to the weekly meeting will have a $500 per week credit given to CompuCom on the final billing invoice

.

**s.**   <u>Quality Assurance</u>

    i.    Vendor shall submit and follow a quality assurance (QA) plan as detailed below for each Site. Digital pictures shall be required to be taken during the quality assurance visits and submitted as part of the QA plan to verify compliance with BICSI, Leviton, Cable cabling specifications and Target's installation standards. Quality Assurance Plan:

        1.    Completion Punch-List Project sign-off during site visit which includes Target requested deliverables (e.g. pictures, sign-off documents, Fuse etc.)

        2.    Vendor will partner with Target AP Store lead to achieve signoff on TVS camera punchlist/cutsheets prior to the turnover date

        3.    Final meeting takes place on day of turn-over or as scheduled with the Target OSR and GC

        4.    If completed Services do not meet quality standards, Vendor will fix any issues at no additional cost to CompuCom or Target.

        5.    The assigned store work shall be deemed accepted upon the OSR completing and signing the installation checklist. This includes MOOD music checklist and any additional checklists Target deems necessary. Checklists must be uploaded into Smartsheets at Turnover

        6.    Vendor will provide a print that is inclusive of the completed voice, data, and TV wall cable system

        7.    As built packages are due no later thanforty-five (45) days from turnover date

    ii.    CompuCom PM site visits will be scheduled in advance and attended by Site Superintendent, Owners Site Representative, ETL-Remodel, Vendor's sub-contractor lead technician and the CompuCom PM.

**t.**   <u>Project Schedule</u>

    i.    Vendor will notify the CompuCom PM of planned work scheduling for each Site.

    ii.    Vendor will manage resource hours and head count to the Sites' current workload and the timetable of the GC. Vendor shall assume financial responsibility if additional resources are needed to complete all scope by Turnover. If there are impacts that are beyond their control (e.g. construction delays, weather impacts) the Vendor will get prior approval from the Target PM for any additional hours.

    iii.    As soon as unplanned activities are identified by the Vendor PM or technician assigned to a store, the Vendor PM must communicate to the CompuCom PM and update Smartsheets if applicable

    iv.    All cabling Services will be scheduled in accordance with work schedules mutually agreed upon by the parties.

    v.    Vendor shall use best commercially reasonable efforts to, except as may otherwise be agreed by the parties, complete work by end of business on the Friday before Construction Turnover.

    vi.    Vendor will not be held accountable for impossibility of completing such work prior to such time, to the extent that Vendor was delayed by incomplete work under Target's control, the GC's contract, non-supply of material by Target or CompuCom, or untimely supply of material by Target or CompuCom.

    vii.    To avoid such delays, Vendor will communicate to CompuCom PM any GC work, or GC incomplete work, and project delays, designer omissions (such as missing power) or Target/CompuCom material shortage that inhibits the completion of low voltage work, as soon as Vendor becomes aware of the same.

**u.**   <u>Store Modifications Services</u>:

    i.    Removal of analog cameras, domes, and cabling from Sales floor. Replace ceiling tile as needed. Ceiling tiles will be provided by Target.

© 2021 CompuCom Systems, Inc. All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom®**

    1. De-install of all encoders from the store

    2. Palletize all Analog equipment and place on CRC pallet for recycling.

**v. Deliverables.** Vendor shall provide the following to CompuCom for each completed Site.

i. Complete Smartsheets task Deliverables, on-time, to plan. Failure to meet daily, weekly or completion timelines will result in a $500 per week penalty until completed as required for each deliverable.

ii. Pictures of all new cabling, data jacks, wall plates, biscuits, back of data rack at MDF/IDF that was cabled to and overall fixture uploaded to Smartsheets;

iii. Any additional pictures requested by CompuCom;

iv. Complete Optical area checklist and upload to Smartsheets;

v. Complete Self Checkout checklist and upload to Smartsheets;

vi. Data destruction log and switch port validation for self checkout registers; and

vii. Scanner results in electronic format for every Optical store Cable voice or data, and fiber cable. Vendor shall provide documentation of all scanner test results in a Windows-based format on compact disc – read only memory ("CD-ROM"), including the view software tools. Each test will be labeled using a naming convention that includes the identification of the link tested and direction. Data shall not be provided in "csv" format. Test results may be in scanner language format and can be uploaded in Smartsheets.

viii. Must post into Smartsheets the Scope Sheets and Labor hours worked each day. Failure to complete this task will result in a $100.00 credit to CompuCom for each day this task is not completed.

**5. Performance Management.**

  **a. General**

i. If Vendor is unable to meet Target's performance criteria as it relates to completing installations according to cabling standards, CompuCom may, at its discretion, cancel any uncompleted installations and terminate this Statement of Work immediately on notice with no further liability, other than for Services accepted prior to termination.

ii. Vendor shall seek mutual agreement with the site ETL-AP/APTL for exterior camera placement reviews and shot verification, in a timely manner. Commercially reasonable efforts will be used to align schedules to gain such agreement. Vendor shall escalate to CompuCom PM in the event that such agreement cannot be reached.

iii. Liquids must not be brought in the control room. Failure to comply will result in a $500 per incident credit given to CompuCom on the final billing invoice.

iv. The designated control room code must be used for entry at all times. Target will provide the control room code to CompuCom and Vendor at mobilization. The code should not be shared with any other trade.

**b. Missed Installations.** Missed installations that had a scheduled lift, CompuCom will bill Vendor for any additional incurred lift charges.

**c. Critical Service Levels.** All Critical Service Levels ("CSL") will be measured once per Site, at the end of the store cycle.

i. CSL 1 – On-Time Delivery Goal = 100%. Goal is to complete site within the hours as stated in Smart sheet.

    1. <u>CSL 1 Calculation</u>. Sites at which work is completed on or before the completion date divided by the Sites on the completion schedule with the following exceptions: (1) Sites rescheduled with CompuCom approval, which are excluded from both numerator and denominator.

    2. <u>**Penalty 4%**</u> - If 100% is not achieved a penalty of 4% calculated by each failed event location labor hours. (Total labor hours/failed store x labor rate x 4% penalty.

© 2021 CompuCom Systems, Inc. All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom.**

**Subcontractor
Statement of Work**

ii.  <u>CSL 2 – Quality - Rework Goal = 100%.</u>  The goal is to complete the store without having a punch list after turnover date provided by Smart sheet

    1.  <u>CSL 2 Calculation.</u> Total Site for which project delivery resources complete the Services without the need for rework after store turnover (additional visits to perform Services that are incomplete and/or inaccurate) divided by the total Sites with the following two (2) exceptions: (1) Sites where Services could not be completed due to unexpected Site conditions (i.e., control room rack space not available) (2) other exceptions as agreed in writing by CompuCom.

    2.  Vendor will be responsible for onsite costs to perform rework.

    3.  **Penalty 4%** - if 100% quality is not achieved a penalty of 4% calculated by each failed event location labor hours.  (Total labor hours/failed store X labor rate X 4% penalty).

iii.  CSL 2A – Quality – Rework completed within 1 week = 100%.  Goal is to complete all punch list (unsatisfactory) items which are provided by Smart sheet.

    1.  All rework should be completed within 1 week of notice.  Anything greater than 1 week will require approval from CompuCom before expected completion date as provided via Smart sheet.

    2.  **Penalty 2%** - If rework items are not completed within 1 week of Smart sheet notice, calculation will be as follows:  (Total labor hours/failed store X labor rate X 2% penalty)

iv.  CSL 3 – Budget Goal = 100%.  The goal is Smart sheet hours matches the monthly invoicing.

    1.  Total Stores Completed within the hours provided by Smart sheets divided by the number of assigned stores provided by Smart sheets

    2.  **Penalty 2%** - If 100% goal is not achieved the calculation for the penalty will be as follows:  Total labor hours/failed store x labor rate x 5%

v.  CSL 4 – Major Incident = 100%.  Goal is to have no Major Incident caused by Vendor.

    1.  Major Incident is defined as "Any interruption in POS payment options for more than 15 minutes and where the criteria below is met is considered a single store major incident and requires Client Technology Operations Center (TOC) Single Store Major Incident communication"

    Examples of Major Incident caused by Vendor:

    a.  Vendor is working in control room and inadvertently cuts the fiber line causing a store outage.

    b.  Vendor doesn't follow installation instructions and removes the wrong device or doesn't properly cable a device and leaves the store unoperational.

    c.  **Penalty 5%** - If 100% goal is not achieved the calculation for the penalty will be as follows:  Total labor hours/failed store x labor rate x 5%

vi.  CSL 5— Onsite Technicians = 100%.  The Goal is to have 2 technicians onsite each day for all Remodel stores.(as classified in Smart sheet).

    1.  **Penalty 5%** - If 100% goal is not achieved the calculation for the penalty will be as follows:  Total labor hours/failed store x labor rate x 5%

**d.  Service Level Credit**. In the event that Vendor fails to meet the above Service Levels in any Store Cycle (as defined and designated in the CompuCom provided site list sheet), Vendor will pay to CompuCom a Service Level Credit as defined in Section 5 performance Management. Vendor shall apply this Service Level Credit on its next invoice to CompuCom, but in any event no later than one (1) month after the failed Service Level is communicated by CompuCom.

**6.  CompuCom Responsibilities**

Prior to the start of the Project, CompuCom will be responsible for providing the following for each Site:

**a.**  Completion Punch List
**b.**  Manuals for installation processes
**c.**  TVS and voice cut sheets
**d.**  Smartsheets access to provide site updates and upload Vendor Deliverables
**e.**  A computer aided design ("CAD") drawing for stores showing the location of the following:
**f.**  Voice, data and TVS station outlet location;

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom.**

**Subcontractor
Statement of Work**

g.  Telephone placements, labeled by the color and type of telephone;
h.  Wireless paging equipment location
i.  Completion punch lists;
j.  Access to the Site; and
k.  Mechanical lifts (as necessary).
l.  Materials
m.  Schedule mandatory initial kickoff, and weekly meetings with the vendor PM. The weekly meeting frequency may be changed based on the progress and ongoing positive or negative issues/results throughout the project

**7.  Resource Team**

Vendor will designate a qualified member of its staff to act as a project manager (the "Vendor Project Manager") and a liaison between Vendor and CompuCom's Project Manager.  The Vendor Project Manager will establish priorities, coordinate Vendor resource schedules, review progress, and assist in issue resolution. CompuCom will be entitled to rely upon such person's representations and authority without seeking further verification.  The Vendor Project Manager is the person to whom CompuCom will address all communications and the person who has the authority to act for Vendor in all aspects of the project.

<u>**Vendor**</u>

| | | |
|---|---|---|
| Project Manager: | | Service/Eng. Manager: |
| | Melissa Kane | |
| Telephone Number: | 609-586-8800 x303 | Telephone Number: |
| E-mail Address: | MKane@kanecomm.com | E-mail Address: |
| Fax Number: | | Fax Number: |

<u>**CompuCom**</u>

| | | |
|---|---|---|
| Remodel Project Manager: | Jaime Kingston | Service/Eng. Manager:: |
| Telephone Number: | 1 (952) 334-3245 | Telephone Number: |
| E-mail Address: | jaime.kingston@compucom.com | E-mail Address: |
| Fax Number: | | Fax Number: |

**8.  Invoicing**

a)  Vendor will invoice weekly in arrears on work completed. No additional invoices for completed Sites will be accepted, unless the CompuCom PM approves additional scope in writing and updates smartsheets. CompuCom shall have no obligation to pay invoices submitted later than sixty (60) days after services delivered, unless Vendor notifies CompuCom in writing of the delay and provides definitive dates by which the invoices shall be delivered.

b)  <u>Lien Release.</u>  Vendor will send with the invoice a lien waiver for the applicable Site(s).  The lien waiver must comply with the applicable state's requirements for final payment and lien waivers and must indicate that all payments for Services and materials at the Sites have been received by Vendor.  Two (2) originals of the lien waiver bearing notarized signatures shall be submitted.  In the event that any liens have been filed by Vendor, CompuCom may withhold from amounts otherwise due an amount equal to one hundred twenty percent (120%) of the amount of such liens until such liens are removed.

c)  Vendor will provide invoices and documentation to CompuCom using the CompuCom Vendor Portal. The Assigned PM will forward all Approved Invoices  to:

| | |
|---|---|
| Accounts Payable Contact: | Accounts Payable |
| Telephone Number: | 888-409-3560 |
| Address: | 8106 Calvin Hall Road, Fort Mill, SC  29707 |
| Email Address: | US_AP@compucom.com, |

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom.**

**Subcontractor
Statement of Work**

Purchase Order Number:      TBD

d) Vendor invoices are required to contain the following information. Any invoice sent not containing all details will not be paid.
- Vendor Name, Address, Phone Number and Email Contact
- Invoice Number
- Purchase Order Number
- Scope of Work
- Store Number
- Hours work per Store
- Rate previously negotiated
- Total Charge by Store
- If vendor is also supplying materials, material charge must be separate from labor and be shown by store in the same format

**9. Pricing/Fees**

CompuCom shall pay fees for the Services and Deliverables described in this SOW as follows:

a) Pricing for Services and Deliverables will be as indicated on the table below and total hours approved will be visible via Smartsheets.

| Store # | Labor Rate $/Hour |
|---------|-------------------|
| T1807 | $52.00 |
| T1863 | $50.00 |
| T0961 | $52.00 |
| T1439 | $50.00 |
| T2037 | $52.00 |
| T2169 | $52.00 |
| T1892 | $52.00 |
| T2354 | $50.00 |
| T2365 | $50.00 |
| T1180 | $52.00 |
| T1872 | $52.00 |
| T1890 | $135.00 |

b) Lift Rental Fee:  CompuCom to provide lifts.

c) All prices are listed in US Dollars and are exclusive of taxes.

**10. Acceptance Criteria.**

**a.** The Services at an assigned Site shall be deemed accepted upon the CompuCom PM's (or Target OSR, as directed) sign off on the Completion Punch List and completion of the Quality Assurance process as described in Section 4(s).

**b.** If CompuCom prefers to accept defective or non-conforming Services or Deliverables, it may do so instead of requiring removal or correction, in which case Smartsheets will be updated to reflect a reduction in the applicable fees where appropriate and equitable.  Such adjustment shall be effected whether or not final payment has been made.

**11. Changes to SOW.** Any changes to this SOW can be made using Project Change Request form as attached hereto as **Attachment A** and signed by authorized representatives of CompuCom and Vendor.  Upon mutual execution, the Project Change Request form will thereupon become part of this SOW, and/or via SmartSheets dully authorized by the CompuCom PM.

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom**

**Subcontractor
Statement of Work**

12. **Additional Flow Down Terms and Conditions from Prime Contract.** Vendor acknowledges and agrees to perform the Services in accordance with the terms and conditions set forth in Attachment C: Client Master Agreement Flow Downs, which are hereby incorporated by reference as material terms of this SOW.  Nothing contained in Attachment C shall create any contractual relationship between Vendor and Client.

This Statement of Work shall be considered fully executed and binding when authorized representatives of both Parties have signed and dated below.

**Agreed by:**

Kane Communications LLC**.**                         **CompuCom Systems, Inc.**

By:  _____        By:  _____

Name:  _____        Name:  _____

Title:  _____        Title:  _____

Date:  _____        Date:  _____

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom.**

**Subcontractor
Statement of Work**

**Attachment A
Project Change Request**

| **CompuCom.**<br>The Leading IT Outsourcing Specialist | **Project Change Request** |
|---|---|

This Project Change Request Form is entered into as of [Insert Date] (the "**PCR Effective Date**"), and when fully executed by both Parties, becomes incorporated by reference into the Statement of Work for 2020 Flight 1 Store Remodels, dated [Insert Date of SOW] by and between CompuCom Systems, Inc. ("**CompuCom**") and [Insert Vendor's Full Legal Name] ("**Vendor**").

**Nature of the proposed change:**

**Reason for the Change:**

**Impact of the Change:**

*Sample*

**Project schedule:** _____

**Project pricing:** _____

**Other impact:** _____

**P.O. to which changes will apply:** _____

**Signatures:**

This Project Change Request shall be considered fully executed and binding when authorized representatives of both Parties have signed and dated below.

<<Vendor Full Name>>                    CompuCom Systems, Inc.

**By:** _____          **By:** _____

**Name:** _____        **Name:** _____

**Title:** _____        **Title:** _____

**Date:** _____        **Date:** _____

*Please file with the Legal Department.*

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom**®

**Attachment B**
**Site List**

| Store # | Store Name | Address | City | State | Zip | Height | Building Type | Store Format | Construction Scope | Pre-Work Lift (4 Weeks) | Approx. City of Cameras Being Replaced | Mobilization | Deliveries Begin | Construction Start | Turnover | Construction Duration | Total Remodel Duration (weeks) | # of Resources | Scope Hrs. | Pre-Work Tech Hrs. | Award Hours | Total Hrs. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T3907 | Asheville | 335 River Hills Rd | Asheville | NC | 28805 | 1 | Base | P | Low Scope | 1 | 24 | 3/3/2022 | 3/10/2022 | 3/23/2022 | 5/6/2022 | 15 | 18 | 2 | 1440 | 160 | 12 | 1612 |
| T3963 | Tucson SE | 9635 E Old Spanish Trl | Tucson | AZ | 85748 | 1 | Base | G | Fulfillment | N/A | 0 | 3/3/2022 | 3/10/2022 | 3/23/2022 | 4/15/2022 | 12 | 15 | 2 | 1200 | 0 | 0 | 1200 |
| T0963 | Cary | 2021 Walnut St | Cary | NC | 27518 | 2 | Base | P | Fulfillment | N/A | 0 | 3/31/2022 | 2/7/2022 | 2/20/2022 | 5/13/2022 | 12 | 15 | 2 | 1200 | 0 | 0 | 1200 |
| T3439 | Tucson El Con Mall | 3695 E Broadway Blvd | Tucson | AZ | 85716 | 2 | USL | P | Fulfillment | N/A | 0 | 3/31/2022 | 2/7/2022 | 2/20/2022 | 5/13/2022 | 12 | 15 | 2 | 1200 | 0 | 0 | 1200 |
| T2037 | Burlington | 1475 University Dr | Burlington | NC | 27215 | 2 | Base | P | Fulfillment | N/A | 0 | 3/31/2022 | 2/7/2022 | 2/20/2022 | 5/13/2022 | 12 | 15 | 2 | 1200 | 0 | 0 | 1200 |
| T2169 | Kannapolis | 6350 Bayfield Pkwy | Concord | NC | 28027 | 2 | Base | S | Fulfillment | N/A | 0 | 3/31/2022 | 2/7/2022 | 2/20/2022 | 5/13/2022 | 12 | 15 | 2 | 1200 | 0 | 0 | 1200 |
| T3892 | Raleigh Central | 4391 The Circle at North Hills | Raleigh | NC | 27609 | 3 | USL | P | High Scope | 1 | 69 | 2/28/2022 | 3/7/2022 | 3/20/2022 | 7/8/2022 | 16 | 19 | 2 | 1520 | 160 | 35 | 1715 |
| T2354 | Phoenix Spectrum | 5715 N 19th Ave | Phoenix | AZ | 85015 | 3 | Base | S | Maintain | 1 | 0 | 2/28/2022 | 3/7/2022 | 3/20/2022 | 7/22/2022 | 18 | 21 | 2 | 1680 | 160 | 0 | 1840 |
| T2365 | Queen Creek | 21398 S Ellsworth Loop Rd | Queen Creek | AZ | 85142 | 3 | Base | S | Fulfillment | N/A | 0 | 2/28/2022 | 4/4/2022 | 4/17/2022 | 6/10/2022 | 12 | 15 | 2 | 1200 | 0 | 0 | 1200 |
| T3190 | Greensboro Lawndale | 2701 Lawndale Dr | Greensboro | NC | 27408 | 4 | Base | P | Fulfillment | N/A | 0 | 3/28/2022 | 4/4/2022 | 4/17/2022 | 7/8/2022 | 12 | 15 | 2 | 1200 | 0 | 0 | 1200 |
| T3572 | Durham | 4037 Durham Chapel Hill Blvd | Durham | NC | 27707 | 4 | Base | S | Fulfillment | N/A | 0 | 3/28/2022 | 4/4/2022 | 4/17/2022 | 7/8/2022 | 12 | 15 | 2 | 1200 | 0 | 0 | 1200 |
| T3890 | Prince Georges Plz | 3500 East West Hwy Ste 3200 | Hyattsville | MD | 20782 | 4 | USL | P | Fulfillment | N/A | 0 | 3/28/2022 | 4/4/2022 | 4/17/2022 | 7/8/2022 | 12 | 15 | 2 | 1200 | 0 | 0 | 1200 |

Note1: Pre-work Tech requires one (1) tech and lift onsite to schedule, and is included in total Hours. The 160 hours is for a technician that is required for the first four (4) weeks of each remodel where noted. They will assist in the prewire but need to be available in case the GC needs them to perform temporary, or move something during this time. This is due to front of store work and the need to keep everything online during and while preparing for this work.

Note2: Scope hours requires two (2) techs onsite and lifts, to schedule

Note3: Intentionally Left Blank

© 2019 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom®**

**Attachment C:**
**Client Master Agreement Flow Downs**

This Attachment C:  Client Master Agreement Flow Downs ("Attachment") contains the terms of the Prime Contract which CompuCom is flowing down to **Kane Communications LLC.**  ("Vendor"). These flow down provisions contain terms that are generally applicable to all vendors providing Services under the Prime Contract.  Notwithstanding anything to the contrary in regarding order of precedence in the Agreement, in the event of a conflict, ambiguity, or inconsistency between the provisions of this Attachment, the Agreement, this Statement of Work, or any ancillary documents, the terms of this Attachment shall control.

1.    **Target Code of Conduct.** Vendor Personnel shall comply with the Target Standard for Conduct, while performing Services in Target's facilities, for personal and professional workplace conduct (e.g., wearing identification badge, using safety equipment, following Target's on-site vendor procedures).

2.    **Vendor Owned Inventory.** Vendor agrees that neither CompuCom nor Target assumes any liability for any Vendor owned inventory of parts or equipment ("Vendor Owned Inventory") that Vendor acquired for providing Services upon termination of this SOW. CompuCom has the right, at its sole discretion, to purchase Vendor Owned Inventory at a mutually agreed upon price. CompuCom shall not be liable for any costs associated with destruction and disposal of Vendor Owned Inventory.

3.    **Security and Compliance.**

3.1.    **Compliance with Target Policies.** Vendor and its personnel and subcontractors ("Vendor Personnel") shall comply with Target's policies and rules regarding safety and security, workplace conduct and information security, including policies and rules regarding the possession of firearms and weapons, the possession or use of drugs and alcohol, inappropriate use of computers and the Internet, and inappropriate behavior, discrimination and harassment to the extent not in conflict with local law. Vendor agrees to incorporate Target's security standards and processes and comply with any request by CompuCom to complete a Vendor Security Assessment Plan. CompuCom shall provide Vendor with written notice of any updated policies and rules implemented after the SOW Effective Date and such updated polices and rules shall become binding upon Vendor within thirty (30) days of such notice.

3.2.    **Compliance with Vendor Policies.** Vendor represents that it has, and agrees to maintain, a comprehensive written information security policy that covers all legal and regulatory requirements, is communicated to appropriate personnel, and has been reviewed and approved by management within the past 12 months. Vendor represents, and agrees that it shall continue to, require security awareness training for all employees and subcontractors with access to CompuCom and Target information. This training will occur at least as frequently as annually.

3.3.    **Regulatory Compliance.** Vendor represents and agrees that with respect to all systems owned, controlled or provided by Vendor or Vendor Personnel that store, process, or transmit Target or CompuCom data are configured to comply with all relevant compliance and regulatory requirements. This includes disabling known insecure processes and protocols, and also includes checking for proper encryption. Vendor shall comply with audits and requests for associated information.

3.4.    **Removable Media.** Vendor shall not store CompuCom or Target data on removable media such as DVDs, SD cards, thumb drives, etc. unless authorized in writing by CompuCom.

3.5.    **Data Destruction.** Vendor shall destroy or render data unreadable prior to the redeployment, removal, or disposal of all physical media or equipment containing CompuCom or Target information or software.

3.6. **Access Requests.** Vendor shall have a formal process in place for granting local Access Requests to CompuCom and Target information and systems. User registration and de-registration procedures shall be in place for granting and revoking access to all information systems, including emergency access. Vendor shall maintain record of Access Request approvals for at least one (1) year.

3.7. **Access Review.** All authorized Vendor access to CompuCom and Target information and systems, including Privileged Access, shall be reviewed, confirmed to be consistent with current job role, and documented by Vendor at least every three (3) months.

3.8. **Privileged Access.** Target shall grant and authorize Privileged Access for Vendor to Target systems that process or store Target information only to the extent that: (i) Vendor access is required to perform the Services; (ii) Vendor maintains a record of users that access such Target systems; and (iii) Vendor's access otherwise complies with the terms of this Agreement and this Attachment.

3.9. **Physical Location Security.** Vendor shall properly segregate Target equipment from any other third party equipment in a secure location. Access to Vendor's facilities shall be monitored 24/7 and restricted through the use of appropriate controls; including physical barriers, ID badges, card readers, video surveillance, alarms, and/or security personnel. Target and CompuCom each reserves the right to inspect the physical location and security with forty eight (48) hours' notice.

3.10.    **CompuCom and Target Access to Vendor Facilities.** Vendor shall provide to Target and to CompuCom, at no additional charge: (i) reasonable access to and use of Vendor Facilities, and (ii) reasonable access to reasonable work/conference space at Vendor Facilities; for the exercise of their rights or the conduct of activities associated with the SOW.

4.    **Assistance for Vesting Rights.** In addition to Vendor's obligations pertaining to intellectual property under the Agreement, Vendor shall execute and deliver promptly to CompuCom (without charge to CompuCom) all written instruments, and shall perform all other legal acts that CompuCom deems necessary or desirable, to enable CompuCom to obtain, defend, enforce, maintain or commercialize, any rights or protections for the Deliverables and vest the entire right and title in and to the Deliverables in CompuCom or its designee.  Vendor acknowledges that if Vendor fails to meet any of its obligations pertaining to intellectual property rights under this Section or the Agreement, CompuCom may suffer irreparable harm for which money damages may not be sufficient to compensate

© 2019 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

CompuCom because it will be difficult and impractical to measure such damages. Accordingly, no performance credit or other remedy shall be deemed the exclusive remedy for any breach or threatened breach of such intellectual property obligations. In addition to any other available rights or remedies at law or equity,

CompuCom shall be entitled to specific performance, injunctive relief and any other equitable remedy as may be awarded by the applicable court.

**5.    Vendor Personnel.**

**5.1.    Assignment of Personnel.** Vendor shall verify that none of the Vendor Personnel assigned to perform the Services has been employed by Target within the past two (2) years prior to assignment.

**5.2.    Notice of Claims.** Vendor shall notify CompuCom of (i) any claims by Vendor Personnel or by a third party that any member of Vendor Personnel is an employee, joint employee and/or not a third party contractor, (ii) any claims that Vendor, CompuCom, or Target has violated wage and hour laws, discrimination statutes or other labor and employment laws, and (iii) investigations by federal, state, local or other government agencies.

**6.    Representations and Warranties.** Vendor represents and warrants to CompuCom that the following statements are true throughout the duration of the SOW:

**6.1.    Materials.** All materials and equipment furnished under this SOW will be of good quality and will be new or warranted as new, unless otherwise specified and agreed in writing, in advance, by CompuCom. All Services not conforming to these requirements, including substitutions not properly approved and authorized, shall be considered defective. Vendor shall not invoice CompuCom for any charges associated with revisits due to defective work by the Vendor. Vendor shall cure such defects within twenty-four (24) hours of notification; provided however, the time for cure may be extended, if within the twenty four (24) hour period, Vendor presents in writing an action plan detailing the steps necessary for cure and how much additional time will be required to effect the cure, and CompuCom approves the action plan, such approval not to be unreasonably held.

**6.2.    No Liens.** To the extent that Vendor provides equipment and products under this SOW, Vendor warrants that it shall promptly pay for all services, materials, equipment, labor used in providing services and shall transfer to CompuCom good, valid and clear title, free and clear of any and all liens and encumbrances. Vendor shall not allow any liens to attach to real estate or personal property of Target or CompuCom in connection with any Services, products or equipment provided by Vendor, its supplier partners, or its subcontractors. Vendor, at its sole cost, shall immediately remove any liens that are attached to Target or CompuCom's real or personal property and shall indemnify Target and CompuCom from, and defend. Target and CompuCom against, any liabilities or expenses (including reasonable attorneys' fees and expenses) arising from any failure to promptly pay all amounts owed or claimed for such services, materials, equipment or labor or any costs incurred by Target or CompuCom associated with removal of any liens.

**7.    Insurance.** In addition to Vendor's obligations under the Agreement, Vendor shall, at all times during the term of the SOW, maintain at its own expense (and cause its agents to obtain and maintain and their own expense) in full force and effect insurance

of the following kinds and amounts, and meeting such other requirements as set forth below.

**7.1.    Workers' Compensation Insurance.** Workers' compensation insurance, or similar insurance, affording statutory coverage and containing statutory limits for the state(s) in which Vendor is conducting business related to this SOW, and employer's liability insurance with minimum limits of coverage of not less than $1,000,000 per accident for bodily injury, $1,000,000 per employee for bodily injury by disease, and $1,000,000 policy limit for bodily injury by disease.  Policy must include an Alternative Employer Endorsement (form WC000301) with CompuCom-scheduled as an alternative employer for primary workers compensation and employers liability coverage. Coverage is provided on an "occurrence" basis.

**7.2. Commercial General Liability.** Commercial general liability ("CGL") insurance with minimum limits of coverage of not less than $5,000,000 per occurrence covering the following: bodily injury, property damage, products and completed operations, contractual liability, personal and advertising injury liability. Such insurance must provide for a severability of interests and, with respect to third party claims or actions arising out of this SOW and brought directly against Target or CompuCom or against any combination of Target, CompuCom and Vendor as co-defendants, include the following language: "Target Corporation, CompuCom Systems, Inc., and each of their respective subsidiaries, affiliates, officers, and employees are included as additional insureds." Limits may be met using a combination of primary and excess coverage. Coverage is provided on an "occurrence" basis.

**7.3. Automobile Liability Insurance.** Automobile liability insurance (including coverage for owned, hired and non-owned vehicles) with minimum limits of not less than $5,000,000 combined single limit per accident. Limits may be met using a combination of primary and excess coverage. Coverage is provided on an "occurrence" basis.

**7.4. Omitted.**

**7.5. Omitted.**

**7.6. Employment Practices Liability.** Employment practices liability covering liabilities from wrongful  acts arising from the employment process in an amount not less  than $5,000,000 per claim. Coverage is provided on a "claims made" basis.

**7.7. General Insurance Requirements.**

**7.7.1.    Insurer Qualifications.** Vendor shall procure all coverage required under this Section from a company or companies possessing an A.M. Best rating of A-:VII or better. Vendor shall obtain all coverage required under this Section from a company or companies that are authorized to do business under the laws of the state(s) in which Vendor is conducting business related to this SOW.

**7.7.2.    Occurrence Basis.** Except for any coverage required or permitted under this Section to be provided on a "claims-made" or "per claim" basis, all coverage required under this Section must be written on an occurrence basis. For any coverage required or permitted to be provided on a "claims-made" or "per claim" basis, such coverage must remain in effect for a term of not less than three (3) years

© 2019 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

CompuCom®

after termination of this SOW, unless this Section provides otherwise.

7.7.3. **Vendor Insurance is Primary.** Vendor's insurance shall be primary and shall be required to respond to and pay prior to any other available coverage of Target or CompuCom.

7.7.4. **Certificate of Insurance.** Vendor shall provide CompuCom with a certificate(s) of insurance evidencing the required coverage concurrently with the execution of this SOW and upon each renewal of such policies and naming Target and CompuCom as an additional insured with regard to Employer's liability, General Liability and Auto Liability. Vendor shall ensure that Vendor or the insurer(s) give CompuCom at least thirty (30) days advance written notice of any material change or cancellation of such policies.

7.7.5. **Self-Insurance.** Vendor shall not self-insure its coverage required under this Section without the prior written consent of CompuCom.

8. **Record Retention and Audit Rights.** Vendor shall secure, retain and make available to CompuCom and its designated representatives all records and supporting documentation sufficient to document all Service and charges for at least two (2) years following expiration of this SOW. During the term of this SOW and for a period of two (2) years after its termination, Vendor shall allow CompuCom and CompuCom's designated representatives to audit, inspect, review and copy ("Audit") all SOW Records during regular business hours. During such Audit(s), Vendor shall provide CompuCom with access to SOW Records and shall provide such assistance as is reasonably requested by CompuCom in connection with an Audit, including without limitation, by providing CompuCom or its agents full access to all required information and facilities, including without limitation, access to hardware, software, personnel, records of charges and other documents and systems controlled by Vendor or Vendor agents, partners, and subcontractors during normal business days  and hours (and at other times for security related inspections or audits) at locations controlled by Vendor or Vendor agents for the sole purpose of performing audits or inspections of the Services as defined. Vendor shall provide access to sufficient space and resources on Vendor's premise to conduct such audit or inspection. Such Audits may extend to Vendor's subcontractors and companies that subcontract or partner with Vendor, whether or not the engagement of such subcontractor(s) is permitted by CompuCom.

8.1. **Agreement Records.** For purposes of this Attachment, "SOW Records" means all information, including Vendor systems, arising from or relating to this SOW including

8.2. without limitation, (i) relevant business records and

records related to the fees charged by Vendor to CompuCom, including time cards and other relevant documentation to support the fees charged by Vendor, (ii) Vendor's systems, and (iii) information reviewed, accessed, transmitted, created or maintained by Vendor under this SOW, including information demonstrating Vendor's compliance with its obligations and responsibilities, and performance of Services hereunder.

8.3. **Audit Results.** If either CompuCom or Target notifies Vendor (whether as result of such an audit or inspection or otherwise) of any material breach or any violation of the law, then Vendor shall promptly correct such violation at Vendor's sole cost.

8.4. **Audits Costs.** CompuCom will pay the cost of any CompuCom-initiated Audit. However, Vendor shall pay the costs of the audit or inspection if charges in excess of 105% of the correct charges are found.

9. **Governing Law and Venue.** As they pertain to Target, the laws of the State of Minnesota, without regard to Minnesota's choice-of-law principles, govern all matters arising out of or related to this SOW. The parties specifically disclaim the application of the United Nations Convention on Contracts for the International Sale of Goods to the interpretation or enforcement of this Agreement. As it pertains to Target, the exclusive forum and venue for any legal action arising out of or related to this SOW shall be the United States District Court for the District of Minnesota, and the parties submit to the personal jurisdiction of that court. If neither subject matter nor diversity jurisdiction exists in the United States District Court for the District of Minnesota, then the exclusive forum and venue for any such action shall be the courts of the State of Minnesota located in Hennepin County, and the parties submit to the personal jurisdiction of that court.

10.**Offset Rights.** CompuCom shall have the right to offset against any fees owed to Vendor any amounts owed by Vendor to CompuCom.

11.**Reserved.**

12.**Reserved.**

13.**Survival.** All warranties and indemnities survive the termination or expiration of this SOW. In addition, every provision that by its terms is intended to survive termination or expiration of this SOW will do so.

© 2019 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

DocuSign Envelope ID: F7F7D832-7DD8-41D9-86F7-56D0F9963407

**CompuCom®**

**Subcontractor
Statement of Work**

**Statement of Work
Target 2022 Flight 5-8 Store Remodels**

This Statement of Work ("**SOW**"), effective as of April 1, 2022 ("**SOW Effective Date**"), is between CompuCom Systems, Inc. ("**CompuCom**") and Kane Communications LLC. ("**Vendor**").  This Statement of Work incorporates by reference the terms and conditions of the CompuCom Vendor Agreement between Vendor and CompuCom dated March 24, 2017 ("**Agreement**"), and any applicable amendments thereto, including the Amendment dated August 2, 2019.

**Vendor Contact:**

Angelo Romeo

**Telephone Number:**  609-586-8800 x303

**E-mail Address:**

ARomeo@kanecomm.com

**Fax Number:**

1.  **Overview**

   CompuCom has engaged Vendor to provide project management, cabling, and equipment installation Services to CompuCom's Client, Target Corporation ("Client" or "Target") as further described herein.

2.  **Projected Term of SOW**

   a.  **Services Commencement Date:  On or around April 1, 2022 (Approximately 30 Days before Mobilization)**

   b.  **Project Completion Date:  On or around October 30, 2022 (Approximately 30 Days past Turnover)**

   c.  The mobilization date and the turnover/completion date may be adjusted, either forward or backward, depending on the project's sequence and schedule. CompuCom will promptly notify Vendor of changes regarding store makeup and/or schedule changes.

3.  **Project Sites; Hours**

   a.  **Sites.** Vendor will provide the Services described in this SOW for each of the Target store locations listed in Attachment B (each a "Site") which may be amended by CompuCom from time to time during the term of this SOW. Vendor commits to providing the Services at any or all of the Sites listed in Attachment B; however, CompuCom is not required to engage Vendor to provide Services for any or all such Sites. Vendor acknowledges and agrees that any volume or quantity forecasts provided to Vendor by CompuCom beyond the Sites listed in Attachment B are estimates and projections only and are not binding on CompuCom.

   b.  **Hours.** Vendor will work within the guidelines of Target's general contractor ("General Contractor" or "GC") with regard to working.Services will be performed 10:00 p.m. to 7:00 a.m. local time, Sunday through Thursday, excluding Holidays (New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day). Overtime rates of time and a half shall apply to any work performed by any technician in excess of 40 hours in any weekly Sunday through Thursday workweek.

4.  **Vendor Services and Deliverables**

   a.  Vendor is required to attend the kick off meetings at each construction site with the Target Owners Site Representative ("OSR") and General Contractor ("GC").

   b.  Vendor shall attend weekly construction meetings and manage the two (2) week look ahead reporting to confirm that site visits are scheduled on time in accordance with dependent third party construction activities.

   c.  Communicate and work with the OSR, GC and CompuCom PM -Remodel which may include:

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.



DocuSign Envelope ID: F7F7D832-7DD8-41D9-86F7-56D0F9963407

**CompuCom**®

**Subcontractor
Statement of Work**

    i.   Vendor representative must attend all weekly construction meetings in person. Format of the meeting will be mutually agreed to by the OSR, GC, and Vendor Project Manager. Failure to report to the weekly meeting will have a $500 per week credit given to CompuCom Systems applied to Invoices.

    ii.   Vendor shall work with the GC and OSR to obtain the site-specific sequence schedule.

**d.**   Provide status/progress reports to CompuCom. Each status report will be required daily and delivered in an electronic format.

**e.**   Vendor will be required to attend status meetings as scheduled by the CompuCom PM as needed.

**f.**   Vendor will communicate to CompuCom PM any missing information that inhibits the completion of the work as soon as Vendor becomes aware of the same.

**g.**   Provide conduit and entry cable status as modifications are discovered. Vendor should escalate any discrepancies from the conduit plans to the CompuCom PM's attention and to help identify appropriate actions to be performed and the responsible party.

**h.**   Provide additional installers as necessary to meet agreed-to deadlines and minimize delays with prior approval from the CompuCom PM. Manage incidents causing damage to stored or installed cable systems materials. This includes:

    i.   Vendor PM will create a Change Order ("CO") indicating the scope of work, cost and responsible party (if known) for incidents requiring Vendor to correct cabling work that is damaged other than by Vendor.

    ii.   If damage is caused by Vendor, Vendor will repair and recover at no additional cost.

    iii.   Route CO to the CompuCom PM.

    iv.   The CompuCom PM will review and obtain the requisite approvals for the CO and advise the OSR to recover the associated costs from the responsible vendor.

**i.**   Submit cable test results, using Fluke tester, or CompuCom approved tester, to CompuCom for Leviton warranty information to obtain lifetime cable warranty.

**j.**   Vendor PM will provide a schedule for the pre-mobilization and mobilization visits and report observations to the CompuCom PM and Target OSR.

**k.**   Vendor PM will notify CompuCom to request all move add change orders (MAC) for hardware that is lost/stolen or not shipped to the Site.

**l.**   Each Vendor PM is required to have a laptop to travel with and will respond to emails/CompuCom requests in a timely fashion. Vendor PMs will have a "hot spot" with Wi-Fi accessibility. A cell phone is not considered adequate. A $500 credit per PM trip violation will be incurred by Vendor not meeting this standard.

**m.**   Except for Lifts CompuCom will provide, Vendor to provide one hundred percent (100%) of the required tools and equipment to complete the Services.

**n.**   <u>Perform the following material handling responsibilities:</u>

    i.   Vendor will be responsible for all equipment once Vendor has taken possession of the equipment at the Vendor facility.

    ii.   Perform an inventory of the equipment.

       1.   The Vendor will locate and perform a box count of equipment received at the Site to be installed and update received quantities in Smartsheets.

       2.   Any subsequent shipments of equipment received at the Site will be box counted by the end of the next business day following notification of shipment arrival.

© 2021 CompuCom Systems, Inc. All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.



**CompuCom.**                                                                                           **Subcontractor
                                                                                                       Statement of Work**

3. Vendor to document any damage caused by the carrier in transit upon its inspection of any such shipped materials.

4. Vendor must provide a complete inventory check within 48 hours of each shipment received. Failure to complete this task will result in a $100.00 credit to CompuCom, daily after the initial 48 hours, until the inventory checklist is 100% complete.

iii. Immediately notify the CompuCom PM of any packing list discrepancies for CompuCom and Target purchased equipment on the same day the equipment is received by Vendor.

iv. Verify packing lists, store, and manage all equipment addressed to Vendor that is shipped to the construction site by Target and CompuCom vendors.

v. Arrange for secure storage of all Vendor Project material and equipment with the OSR or the Construction Contractor Superintendent. If required, CompuCom will arrange to provide secure storage. The Control room CANNOT be used for secure storage or storage of any equipment.

vi. At the end of each working day, all TTS equipment & materials will be stored in the secure storage area.

vii. For Device(s) that is Out of Box Failure ("OBF") the Vendor shall contact the CompuCom PM for the Target specified process.

a. Any OBF must be returned as specified by Target. For any OBF Devices not returned, Vendor will be responsible for the replacement cost of a new Device. For OBF Devices returned and found not defective, Vendor will not bill for the return visit to the Assigned Store to install the replacement Device, and will be responsible for shipping cost of the replacement new Device to the Assigned Store.

   i. For items returned and found not defective, Vendor will not bill for return visit, and will be responsible for shipping of new device.

viii. RF and TVS cutsheets. CompuCom will be responsible for supplying Vendor with each stores' current RF and Voice Devices.

**o. Vendor Installation Responsibilities:**

i. Vendor will support cabling requirements of this project with Cabling qualified technicians, in accordance with Target cabling standards.

1. Assigned duties of the lead technician may not be tiered or split between two different stores. The lead technician, and supporting technicians will stay the same throughout the project, unless circumstances arise that can not be resolved in another manner, other then swapping a technician

2. Project work will be performed after hours Sunday – Thursday nights.

ii. Voice/Data/TVS cables. As each Site requires, provide/install voice/data/TVS station cables at and between the IDF or the Control Room/Main Distribution Frame ("MDF") and:

1. Point of Sale ("POS") terminal locations
2. Food Scales
3. Self-Check Out ("SCO") terminals
4. Local Area Network ("LAN") device locations
5. Leased (Optical, Pharmacy)
6. Non-Leased spaces (Food Ave, Starbucks, Adult Beverage etc.)
7. Analog and digital telephones
8. Kiosks, workstations and printers
9. Mini-assistance centers (MACs)

© 2021 CompuCom Systems, Inc. All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom®**

## Subcontractor
## Statement of Work

10. Wiring for access points
11. Access Point Hardware Refresh
12. Time clock locations
13. TVS cable system
14. ISDM cable digital media player (e.g. TV wall or valley, Disney, video game endcap, beauty, front of store and growler station)
15. Miscellaneous telephone cables
16. IDF moves and switch additions and upgrades as needed
17. MDF switch additions and upgrades as needed
18. RG6 cable lounge TV connection to antenna
19. In-store music speaker cabling and install
20. Providing network cable drops for EAS Pedestal door towers and (Order Pickup) OPU door.
21. Provide cabling for Cash Recycler as needed
22. District Group Regional Office Decommissioning

iii.  If IDF move is required and existing fiber will not reach, install and label a four (4) strand fiber cable and the termination equipment for the Ethernet switch interconnections and the termination equipment between the Control Room and the remote switch.

1.  As each Site requires, provide and install the required riser cables for the voice backbone between the MDF and the IDFs.

2.  Install the voice and data locations as defined on the mutually agreed upon CAD prints.

3.  Install the other mutually agreed upon voice/data devices as defined on the fixture, electrical and telecommunications CAD prints.

4.  Label all newly installed cables, termination panels, wall plates, and outlets using Target standards as provided by the CompuCom PM prior to the cabling start date.

5.  All voice and data cable infrastructure in the store environment will be installed in accordance with the specifications currently defined in the Remodel LV Cabling Manual (to be provided by CompuCom). The Target Network Services LAN team must approve any deviations from this standard. Vendor will be responsible for all wiring work to be compliant with all applicable codes and will use the standards documents identified in the Remodel LV Cable Manual as guidelines for the completion of the work.

6.  Vendor will review all specified IDF locations and cable pathways to confirm compliance with all applicable codes, standards, and general contractor's electrical installation plan. All deviations will be communicated prior to mobilization start date or upon discovery to the CompuCom PM and LAN Engineering team to drive timely resolution.

7.  Vendor shall work with Target to define TVS conversion activity schedule per the store sequence schedule. Target Rollout Room will be available during TVS conversion activities. For all other TVS project work, Vendor will plan and schedule appropriately all remaining project work in cooperation with Target and the CompuCom PM.

8.  Mood Music hardware installation per the provided print with integration to each store's PA system.

9.  Destination Beauty shielded white or gray cable installation per the print. White is the preference color.

   a.  Equipment racks

      i.  As each Site requires, provide and install in the MDF racks at each Site.
      ii.  Removal of old unused equipment from MDF rack
      iii.  Follow device power security standards in MDF rack.
      iv.  Cleanup all patch cables to acceptable standards.
      v.  As each Site requires, provide and install at each IDF a single wall mounted rack, unless determined specified site needs require a Sales Floor IDF Cabinet. Vendor is responsible for

© 2021 CompuCom Systems, Inc. All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.



**CompuCom**®

**Subcontractor
Statement of Work**

identification of the need for the Sales Floor IDF Cabinet and will coordinate with the Target Deployment team to create an IDF move with the Architect and Engineer.

10. All net new cabling will be installed with Cat6a. All temp cables will be Cat5e.

11. If existing Devices are re-locating and require a new cable run, it must be Cat6a.

12. If patch panels are 110 style patch panels, Cat6a cable will be punched down to panel. Test cable to Cat6a standards. If patch panels are modular, replace jack with Cat6a and terminate. Test cable to Cat6a standards.

13. Proper scrubbing and disposition process for all hardware vendor will be removing as per scope of the store. Switches, POS registers, Workstations, cameras, etc.

14. Removal of old speaker and horns from the sales floor once the MOOD systems have been integrated with the paging system.

15. Telephone
    a. As each Site requires, provide, install, label, patch, and test the analog telephones as defined in the Voice and Data Cable Systems Manual.
    b. As each Site requires, provide and install analog telephone patch cords and a telephone line and handset cords.
    c. As each Site requires, place the IP telephones as defined in the Voice and Data Cable Systems Manual.

16. Telephone Circuit Verification
    a. As each Site requires, Vendor will conduct telephone circuit verification as defined in the Voice and Data Cable Systems Manual.

17. Paging System
    a. Provide, install, and modify as defined for each Site's project scope of work in accordance with the CompuCom provided Music Install manual

18. Additional Work as Assigned
    a. During the course of the Site completion window, there may be additional work requested of the technician. To the extent the technician is qualified to perform the additional scope of work, Vendor will complete the requested work as in scope work.

**p.   Project Management Services.**

i.   Vendor Project Manager. Vendor will identify an individual from its organization to serve as Vendor's Project Manager. The Vendor Project Manager will serve as the principal contact with CompuCom and will be responsible for responding to all requests and providing all other information required by the CompuCom Project Manager.

ii.   Lead Installer. Vendor will designate a minimum of one (1) on-Site representative per Site as a Lead Installer, who shall be accessible via cellphone at all times while on Site.  Vendor shall furnish the Lead Installer's name, cellphone number and email address to the CompuCom Project Manager prior to the start of Services.

**q.   Permits.** Permits. Vendor will not begin work until all of its applicable permits are in place. Obtaining and paying for project-specific permits is not Vendor's responsibility.

**r.   Status Updates**

i.   Vendor will contact CompuCom PM at agreed upon intervals (typically weekly and provide a status/progress report

ii.   Vendor will update Smartsheets in a timely manner listing tasks completed and switch port information

iii.   Vendor representative must attend all weekly construction meetings in person.  Format of the meeting will be mutually agreed to by the OSR, GC and Vendor Project Manager. Failure to report to the weekly meeting will have a $500 per week credit given to CompuCom on the final billing invoice

Contract#4211

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom®**

**Subcontractor
Statement of Work**

s.   **Quality Assurance**

i.   Vendor shall submit and follow a quality assurance (QA) plan as detailed below for each Site. Digital pictures shall be required to be taken during the quality assurance visits and submitted as part of the QA plan to verify compliance with BICSI, Leviton, Cable cabling specifications and Target's installation standards. Quality Assurance Plan:

1.   Completion Punch-List Project sign-off during site visit which includes Target requested deliverables (e.g. pictures, sign-off documents, Fuse etc.)
2.   Vendor will partner with Target AP Store lead to achieve signoff on TVS camera punchlist/cutsheets prior to the turnover date
3.   Final meeting takes place on day of turn-over or as scheduled with the Target OSR and GC
4.   If completed Services do not meet quality standards, Vendor will fix any issues at no additional cost to CompuCom or Target.
5.   The assigned store work shall be deemed accepted upon the OSR completing and signing the installation checklist. This includes MOOD music checklist and any additional checklists Target deems necessary. Checklists must be uploaded into Smartsheets at Turnover
6.   Vendor will provide a print that is inclusive of the completed voice, data, and TV wall cable system
7.   As built packages are due no later thanforty-five (45) days from turnover date

ii.   CompuCom PM site visits will be scheduled in advance and attended by Site Superintendent, Owners Site Representative, ETL-Remodel, Vendor's sub-contractor lead technician and the CompuCom PM.

t.   **Project Schedule**

i.   Vendor will notify the CompuCom PM of planned work scheduling for each Site.

ii.   Vendor will manage resource hours and head count to the Sites' current workload and the timetable of the GC. Vendor shall assume financial responsibility if additional resources are needed to complete all scope by Turnover. If there are impacts that are beyond their control (e.g. construction delays, weather impacts) the Vendor will get prior approval from the Target PM for any additional hours.

iii.   As soon as unplanned activities are identified by the Vendor PM or technician assigned to a store, the Vendor PM must communicate to the CompuCom PM and update Smartsheets if applicable

iv.   All cabling Services will be scheduled in accordance with work schedules mutually agreed upon by the parties.

v.   Vendor shall use best commercially reasonable efforts to, except as may otherwise be agreed by the parties, complete work by end of business on the Friday before Construction Turnover.

vi.   Vendor will not be held accountable for impossibility of completing such work prior to such time, to the extent that Vendor was delayed by incomplete work under Target's control, the GC's contract, non-supply of material by Target or CompuCom, or untimely supply of material by Target or CompuCom.

vii.   To avoid such delays, Vendor will communicate to CompuCom PM any GC work, or GC incomplete work, and project delays,  designer omissions (such as missing power) or Target/CompuCom material shortage that inhibits the completion of low voltage work, as soon as Vendor becomes aware of the same.

u.   **Store Modifications Services**:

i.   Removal of analog cameras, domes, and cabling from Sales floor. Replace ceiling tile as needed.  Ceiling tiles will be provided by Target.

1.   De-install of all encoders from the store

2.   Palletize all Analog equipment and place on CRC pallet for recycling.

v.   **Deliverables.** Vendor shall provide the following to CompuCom for each completed Site.



# CompuCom.

**Subcontractor
Statement of Work**

   i.    Complete Smartsheets task Deliverables, on-time, to plan. Failure to meet daily, weekly or completion timelines will result in a $500 per week penalty until completed as required for each deliverable.

   ii.    Pictures of all new cabling, data jacks, wall plates, biscuits, back of data rack at MDF/IDF that was cabled to and overall fixture uploaded to Smartsheets;

   iii.    Any additional pictures requested by CompuCom;

   iv.    Complete Optical area checklist and upload to Smartsheets;

   v.    Complete Self Checkout checklist and upload to Smartsheets;

   vi.    Data destruction log and switch port validation for self checkout registers; and

   vii.    Scanner results in electronic format for every Optical store Cable voice or data, and fiber cable. Vendor shall provide documentation of all scanner test results in a Windows-based format on compact disc – read only memory ("CD-ROM"), including the view software tools.  Each test will be labeled using a naming convention that includes the identification of the link tested and direction. Data shall not be provided in "csv" format.  Test results may be in scanner language format and can be uploaded in Smartsheets.

   viii.    Must post into Smartsheets the Scope Sheets and Labor hours worked each day. Failure to complete this task will result in a $100.00 credit to CompuCom for each day this task is not completed.

**5.  Performance Management.**

   **a.  General**
     i.    If Vendor is unable to meet Target's performance criteria as it relates to completing installations according to cabling standards, CompuCom may, at its discretion, cancel any uncompleted installations and terminate this Statement of Work immediately on notice with no further liability, other than for Services accepted prior to termination.

     ii.    Vendor shall seek mutual agreement with the site ETL-AP/APTL for exterior camera placement reviews and shot verification, in a timely manner. Commercially reasonable efforts will be used to align schedules to gain such agreement. Vendor shall escalate to CompuCom PM in the event that such agreement cannot be reached.

     iii.    Liquids must not be brought in the control room.  Failure to comply will result in a $500 per incident credit given to CompuCom on the final billing invoice.

     iv.    The designated control room code must be used for entry at all times. Target will provide the control room code to CompuCom and Vendor at mobilization.  The code should not be shared with any other trade.

   **b.  <u>Missed Installations.</u>**  Missed installations that had a scheduled lift, CompuCom will bill Vendor for any additional incurred lift charges.

**6.  CompuCom Responsibilities**

Prior to the start of the Project, CompuCom will be responsible for providing the following for each Site:
**a.**  Completion Punch List
**b.**  Manuals for installation processes
**c.**  TVS and voice cut sheets
**d.**  Smartsheets access to provide site updates and upload Vendor Deliverables
**e.**  A computer aided design ("CAD") drawing for stores showing the location of the following:
**f.**  Voice, data and TVS station outlet location;
**g.**  Telephone placements, labeled by the color and type of telephone;
**h.**  Wireless paging equipment location
**i.**  Completion punch lists;
**j.**  Access to the Site; and
**k.**  Mechanical lifts (as necessary).
**l.**  Materials

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.



DocuSign Envelope ID: F7F7D832-7DD8-41D9-86F7-56D0F9963407

**CompuCom.**

**Subcontractor
Statement of Work**

**m.** Schedule mandatory initial kickoff, and weekly meetings with the vendor PM. The weekly meeting frequency may be changed based on the progress and ongoing positive or negative issues/results throughout the project

**7. Resource Team**

Vendor will designate a qualified member of its staff to act as a project manager (the "Vendor Project Manager") and a liaison between Vendor and CompuCom's Project Manager. The Vendor Project Manager will establish priorities, coordinate Vendor resource schedules, review progress, and assist in issue resolution. CompuCom will be entitled to rely upon such person's representations and authority without seeking further verification. The Vendor Project Manager is the person to whom CompuCom will address all communications and the person who has the authority to act for Vendor in all aspects of the project.

**Vendor**

| | | | |
|---|---|---|---|
| Project Manager: | Angelo Romeo | Service/Eng. Manager: | |
| Telephone Number: | 609-586-8800 x303 | Telephone Number: | |
| E-mail Address: | aromeo@kanecomm.com | E-mail Address: | |
| Fax Number: | | Fax Number: | |

**CompuCom**

| | | | |
|---|---|---|---|
| Remodel Project Manager: | Jaime Kingston | Service/Eng. Manager:: | |
| Telephone Number: | 1 (952) 334-3245 | Telephone Number: | |
| E-mail Address: | jaime.kingston@compucom.com | E-mail Address: | |
| Fax Number: | | Fax Number: | |

**8. Invoicing**

a) Vendor will invoice weekly in arrears on work completed. No additional invoices for completed Sites will be accepted, unless the CompuCom PM approves additional scope in writing and updates smartsheets. CompuCom shall have no obligation to pay invoices submitted later than forty five (45) days after services delivered, unless Vendor notifies CompuCom in writing of the delay and provides definitive dates by which the invoices shall be delivered.

b) <u>Lien Release.</u> Vendor will send with the invoice a lien waiver for the applicable Site(s). The lien waiver must comply with the applicable state's requirements for final payment and lien waivers and must indicate that all payments for Services and materials at the Sites have been received by Vendor. Two (2) originals of the lien waiver bearing notarized signatures shall be submitted. In the event that any liens have been filed by Vendor, CompuCom may withhold from amounts otherwise due an amount equal to one hundred twenty percent (120%) of the amount of such liens until such liens are removed.

c) Vendor will provide invoices and documentation to CompuCom using the CompuCom Vendor Portal. The Assigned PM will forward all Approved Invoices to:

| | |
|---|---|
| Accounts Payable Contact: | Accounts Payable |
| Telephone Number: | 888-409-3560 |
| Address: | 8106 Calvin Hall Road, Fort Mill, SC  29707 |
| Email Address: | US_AP@compucom.com, |
| Purchase Order Number: | TBD |

d) Vendor invoices are required to contain the following information. Any invoice sent not containing all details will not be paid.
- Vendor Name, Address, Phone Number and Email Contact
- Invoice Number
- Purchase Order Number
- Scope of Work
- Store Number
- Hours work per Store
- Rate previously negotiated

Contract#4211

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.



DocuSign Envelope ID: F7F7D832-7DD8-41D9-86F7-56D0F9963407

**CompuCom**

**Subcontractor
Statement of Work**

- Total Charge by Store
- If vendor is also supplying materials, material charge must be separate from labor and be shown by store in the same format

**9. Pricing/Fees**

CompuCom shall pay fees for the Services and Deliverables described in this SOW as follows:

a) Pricing for Services and Deliverables will be as indicated on the table below and total hours approved will be visible via Smartsheets.

| Store # | Labor Rate $/Hour (up to 40 hours/week) | Time and a Half Rates (work performed in excess of 40 hours/week) |
|---|---|---|
| T2011 | $ 58.00 | $ 87.00 |
| T2227 | $ 55.00 | $ 82.50 |
| T2111 | $ 58.00 | $ 87.00 |
| T1959 | $ 55.00 | $ 82.50 |
| T1386 | $ 55.00 | $ 82.50 |
| T2090 | $ 58.00 | $87.00 |

b) Lift Rental Fee:  CompuCom to provide lifts.
c) All prices are listed in US Dollars and are exclusive of taxes.
d) CompuCom shall pay Vendor within 45 days of CompuCom's receipt of Vendor's invoice.

**10. Acceptance Criteria.**

a. The Services at an assigned Site shall be deemed accepted upon the CompuCom PM's (or Target OSR, as directed) sign off on the Completion Punch List and completion of the Quality Assurance process as described in Section 4(s).
b. If CompuCom prefers to accept defective or non-conforming Services or Deliverables, it may do so instead of requiring removal or correction, in which case Smartsheets will be updated to reflect a reduction in the applicable fees where appropriate and equitable.  Such adjustment shall be effected whether or not final payment has been made.

**11. Changes to SOW.**  Any changes to this SOW can be made using Project Change Request form as attached hereto as **Attachment A** and signed by authorized representatives of CompuCom and Vendor.  Upon mutual execution, the Project Change Request form will thereupon become part of this SOW, and/or via SmartSheets dully authorized by the CompuCom PM.

**12. Additional Flow Down Terms and Conditions from Prime Contract.**  Vendor acknowledges and agrees to perform the Services in accordance with the terms and conditions set forth in Attachment C: Client Master Agreement Flow Downs, which are hereby incorporated by reference as material terms of this SOW.  Nothing contained in Attachment C shall create any contractual relationship between Vendor and Client.

This Statement of Work shall be considered fully executed and binding when authorized representatives of both Parties have signed and dated below.

**Agreed by:**

| **Kane Communications LLC.** | | **CompuCom Systems, Inc.** | |
|---|---|---|---|
| By: | *Ryan R Kasten* | By: | *Kenneth Janoski* |
| Name: | Ryan R Kasten | Name: | Kenneth Janoski |
| Title: | CFO | Title: | VP and GM – Central Region |
| Date: | 4/29/2022 | Date: | 4/29/2022 |

Contract#4211

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

DocuSign Envelope ID: F7F7D832-7DD8-41D9-86F7-56D0F9963407

**CompuCom.**

**Subcontractor
Statement of Work**

**Attachment A
Project Change Request**

| **CompuCom.** The Leading IT Outsourcing Specialist | **Project Change Request** |
|---|---|

This Project Change Request Form is entered into as of [Insert Date] (the "**PCR Effective Date**"), and when fully executed by both Parties, becomes incorporated by reference into the Statement of Work for 2020 Flight 1 Store Remodels, dated [Insert Date of SOW] by and between CompuCom Systems, Inc. ("**CompuCom**") and [Insert Vendor's Full Legal Name] ("**Vendor**").

**Nature of the proposed change:**

**Reason for the Change:**

**Impact of the Change:**

**Project schedule:** _____

**Project pricing:** _____

**Other impact:** _____

**P.O. to which changes will apply:** _____

**Signatures:**

This Project Change Request shall be considered fully executed and binding when authorized representatives of both Parties have signed and dated below.

<mark>**<<Vendor Full Name>>**</mark>          **CompuCom Systems, Inc.**

| **By:** _____ | **By:** _____ |
|---|---|
| **Name:** _____ | **Name:** _____ |
| **Title:** _____ | **Title:** _____ |
| **Date:** _____ | **Date:** _____ |

*Please file with the Legal Department.*

© 2021 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.



DocuSign Envelope ID: F7F7D832-7DD8-41D9-86F7-56D0F9963407

**CompuCom**

## Attachment B
## Site List

| Store | Store Name | Address | City | St | Zip | File | Building Type | Store Form | Construction Scope | Number of Lift | Pre-work Lift (4 Week) | Mobilization | Deliveries Begin | Construction Start (NEW) | Turnover (NEW) | Construction Duration (NEW) | Total Remodel Duration in weeks (NEW) | # of Resour | Scope Hrs. (NEW) | Pre-Work Tech H | TVS Award Hour | Total Hrs. (NEW) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| T2011 | Asheville Sou | 15 McKenna Rd | Arden | NC | 28704 | 5 | Base | P | Low Scope | 2 | 1 | 4/25/2022 | 5/2/2022 | 5/15/2022 | 9/9/2022 | 17 | 20 | 2 | 1600 | 160 | 17 | 1777 |
| T2227 | Peoria Far No | 24890 N Lake Pl | Peoria | AZ | 85383 | 5 | Base | S | SuperTarget Lite | 2 | 1 | 4/25/2022 | 5/2/2022 | 5/15/2022 | 9/30/2022 | 20 | 23 | 2 | 1840 | 160 | N/A | 2000 |
| T2111 | Knightdale | 1000 Shoppes a | Knightdale | NC | 27545 | 6 | Base | P | Fulfillment | 2 | N/A | 5/23/2022 | 5/30/2022 | 6/12/2022 | 9/30/2022 | 16 | 19 | 2 | 1520 | N/A | N/A | 1520 |
| T1959 | Gilbert Gatew | 5110 S Power R | Mesa | AZ | 85212 | 6 | Base | S | Maintain | 2 | 1 | 5/23/2022 | 5/30/2022 | 6/12/2022 | 10/14/2022 | 18 | 21 | 2 | 1680 | 160 | 30 | 1870 |
| T1386 | Mesa Red Mo | 2151 N Power R | Mesa | AZ | 85215 | 7 | Base | P | Low Scope | 2 | 1 | 6/20/2022 | 6/27/2022 | 7/10/2022 | 11/4/2022 | 17 | 20 | 2 | 1600 | 160 | 20 | 1780 |
| T2090 | Charlotte Bla | 9870 Rea Rd | Charlotte | NC | 28277 | 7 | Base | P | Low Scope | 2 | 1 | 6/20/2022 | 6/27/2022 | 7/10/2022 | 11/4/2022 | 17 | 20 | 2 | 1600 | 160 | N/A | 1760 |

Note1: Pre-work Tech requires one (1) tech and lift onsite to schedule, and is included in total Hours. The 160 hours is for a technician that is required for the first four (4) weeks of each remodel where noted. They will assist in the prewire but need to be available in case the GC needs them to perform temporary, or move something during this time. This is due to front of store work and the need to keep everything online during and while preparing for this work.

Note2: Scope hours requires two (2) techs onsite and lifts, to schedule

Note3: Intentionally Left Blank

© 2019 CompuCom Systems, Inc. All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

DocuSign Envelope ID: F7F7D832-7DD8-41D9-86F7-56D0F9963407

**CompuCom®**

**Attachment C:**
**Client Master Agreement Flow Downs**

This Attachment C: Client Master Agreement Flow Downs ("Attachment") contains the terms of the Prime Contract which CompuCom is flowing down to **Kane Communications LLC.** ("Vendor"). These flow down provisions contain terms that are generally applicable to all vendors providing Services under the Prime Contract. Notwithstanding anything to the contrary in regarding order of precedence in the Agreement, in the event of a conflict, ambiguity, or inconsistency between the provisions of this Attachment, the Agreement, this Statement of Work, or any ancillary documents, the terms of this Attachment shall control.

1. **Target Code of Conduct.** Vendor Personnel shall comply with the Target Standard for Conduct, while performing Services in Target's facilities, for personal and professional workplace conduct (e.g., wearing identification badge, using safety equipment, following Target's on-site vendor procedures).

2. **Vendor Owned Inventory.** Vendor agrees that neither CompuCom nor Target assumes any liability for any Vendor owned inventory of parts or equipment ("Vendor Owned Inventory") that Vendor acquired for providing Services upon termination of this SOW. CompuCom has the right, at its sole discretion, to purchase Vendor Owned Inventory at a mutually agreed upon price. CompuCom shall not be liable for any costs associated with destruction and disposal of Vendor Owned Inventory.

3. **Security and Compliance.**

3.1. **Compliance with Target Policies.** Vendor and its personnel and subcontractors ("Vendor Personnel") shall comply with Target's policies and rules regarding safety and security, workplace conduct and information security, including policies and rules regarding the possession of firearms and weapons, the possession or use of drugs and alcohol, inappropriate use of computers and the Internet, and inappropriate behavior, discrimination and harassment to the extent not in conflict with local law. Vendor agrees to incorporate Target's security standards and processes and comply with any request by CompuCom to complete a Vendor Security Assessment Plan. CompuCom shall provide Vendor with written notice of any updated policies and rules implemented after the SOW Effective Date and such updated polices and rules shall become binding upon Vendor within thirty (30) days of such notice.

3.2. **Compliance with Vendor Policies.** Vendor represents that it has, and agrees to maintain, a comprehensive written information security policy that covers all legal and regulatory requirements, is communicated to appropriate personnel, and has been reviewed and approved by management within the past 12 months. Vendor represents, and agrees that it shall continue to, require security awareness training for all employees and subcontractors with access to CompuCom and Target information. This training will occur at least as frequently as annually.

3.3. **Regulatory Compliance.** Vendor represents and agrees that with respect to all systems owned, controlled or provided by Vendor or Vendor Personnel that store, process, or transmit Target or CompuCom data are configured to comply with all relevant compliance and regulatory requirements. This includes disabling known insecure processes and protocols, and also includes checking for proper encryption. Vendor shall comply with audits and requests for associated information.

3.4. **Removable Media.** Vendor shall not store CompuCom or Target data on removable media such as DVDs, SD cards, thumb drives, etc. unless authorized in writing by CompuCom.

3.5. **Data Destruction.** Vendor shall destroy or render data unreadable prior to the redeployment, removal, or disposal of all physical media or equipment containing CompuCom or Target information or software.

3.6. **Access Requests.** Vendor shall have a formal process in place for granting local Access Requests to CompuCom and Target information and systems. User registration and de-registration procedures shall be in place for granting and revoking access to all information systems, including emergency access. Vendor shall maintain record of Access Request approvals for at least one (1) year.

3.7. **Access Review.** All authorized Vendor access to CompuCom and Target information and systems, including Privileged Access, shall be reviewed, confirmed to be consistent with current job role, and documented by Vendor at least every three (3) months.

3.8. **Privileged Access.** Target shall grant and authorize Privileged Access for Vendor to Target systems that process or store Target information only to the extent that: (i) Vendor access is required to perform the Services; (ii) Vendor maintains a record of users that access such Target systems; and (iii) Vendor's access otherwise complies with the terms of this Agreement and this Attachment.

3.9. **Physical Location Security.** Vendor shall properly segregate Target equipment from any other third party equipment in a secure location. Access to Vendor's facilities shall be monitored 24/7 and restricted through the use of appropriate controls; including physical barriers, ID badges, card readers, video surveillance, alarms, and/or security personnel. Target and CompuCom each reserves the right to inspect the physical location and security with forty eight (48) hours' notice.

3.10. **CompuCom and Target Access to Vendor Facilities.** Vendor shall provide to Target and to CompuCom, at no additional charge: (i) reasonable access to and use of Vendor Facilities, and (ii) reasonable access to reasonable work/conference space at Vendor Facilities; for the exercise of their rights or the conduct of activities associated with the SOW.

4. **Assistance for Vesting Rights.** In addition to Vendor's obligations pertaining to intellectual property under the Agreement, Vendor shall execute and deliver promptly to CompuCom (without charge to CompuCom) all written instruments, and shall perform all other legal acts that CompuCom deems necessary or desirable, to enable CompuCom to obtain, defend, enforce, maintain or commercialize, any rights or protections for the Deliverables and vest the entire right and title in and to the Deliverables in CompuCom or its designee. Vendor acknowledges that if Vendor fails to meet any of its obligations pertaining to intellectual property rights under this Section or the Agreement, CompuCom may suffer irreparable harm for which money damages may not be sufficient to compensate

© 2019 CompuCom Systems, Inc. All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

DocuSign Envelope ID: F7F7D832-7DD8-41D9-86F7-56D0F9963407

CompuCom because it will be difficult and impractical to measure such damages. Accordingly, no performance credit or other remedy shall be deemed the exclusive remedy for any breach or threatened breach of such intellectual property obligations. In addition to any other available rights or remedies at law or equity,

CompuCom shall be entitled to specific performance, injunctive relief and any other equitable remedy as may be awarded by the applicable court.

**5.     Vendor Personnel.**

**5.1.     Assignment of Personnel.** Vendor shall verify that none of the Vendor Personnel assigned to perform the Services has been employed by Target within the past two (2) years prior to assignment.

**5.2.     Notice of Claims.** Vendor shall notify CompuCom of (i) any claims by Vendor Personnel or by a third party that any member of Vendor Personnel is an employee, joint employee and/or not a third party contractor, (ii) any claims that Vendor, CompuCom, or Target has violated wage and hour laws, discrimination statutes or other labor and employment laws, and (iii) investigations by federal, state, local or other government agencies.

**6.     Representations and Warranties.** Vendor represents and warrants to CompuCom that the following statements are true throughout the duration of the SOW:

**6.1.     Materials.** All materials and equipment furnished under this SOW will be of good quality and will be new or warranted as new, unless otherwise specified and agreed in writing, in advance, by CompuCom. All Services not conforming to these requirements, including substitutions not properly approved and authorized, shall be considered defective. Vendor shall not invoice CompuCom for any charges associated with revisits due to defective work by the Vendor. Vendor shall cure such defects within twenty-four (24) hours of notification; provided however, the time for cure may be extended, if within the twenty four (24) hour period, Vendor presents in writing an action plan detailing the steps necessary for cure and how much additional time will be required to effect the cure, and CompuCom approves the action plan, such approval not to be unreasonably held.

**6.2.     No Liens.** To the extent that Vendor provides equipment and products under this SOW, Vendor warrants that it shall promptly pay for all services, materials, equipment, labor used in providing services and shall transfer to CompuCom good, valid and clear title, free and clear of any and all liens and encumbrances. Vendor shall not allow any liens to attach to real estate or personal property of Target or CompuCom in connection with any Services, products or equipment provided by Vendor, its supplier partners, or its subcontractors. Vendor, at its sole cost, shall immediately remove any liens that are attached to Target or CompuCom's real or personal property and shall indemnify Target and CompuCom from, and defend. Target and CompuCom against, any liabilities or expenses (including reasonable attorneys' fees and expenses) arising from any failure to promptly pay all amounts owed or claimed for such services, materials, equipment or labor or any costs incurred by Target or CompuCom associated with removal of any liens.

**7.     Insurance.** In addition to Vendor's obligations under the Agreement, Vendor shall, at all times during the term of the SOW, maintain at its own expense (and cause its agents to obtain and maintain and their own expense) in full force and effect insurance of the following kinds and amounts, and meeting such other requirements as set forth below.

**7.1.     Workers' Compensation Insurance.** Workers' compensation insurance, or similar insurance, affording statutory coverage and containing statutory limits for the state(s) in which Vendor is conducting business related to this SOW, and employer's liability insurance with minimum limits of coverage of not less than $1,000,000 per accident for bodily injury, $1,000,000 per employee for bodily injury by disease, and $1,000,000 policy limit for bodily injury by disease.  Policy must include an Alternative Employer Endorsement (form WC000301) with CompuCom-scheduled as an alternative employer for primary workers compensation and employers liability coverage. Coverage is provided on an "occurrence" basis.

**7.2. Commercial General Liability.** Commercial general liability ("CGL") insurance with minimum limits of coverage of not less than $5,000,000 per occurrence covering the following: bodily injury, property damage, products and completed operations, contractual liability, personal and advertising injury liability. Such insurance must provide for a severability of interests and, with respect to third party claims or actions arising out of this SOW and brought directly against Target or CompuCom or against any combination of Target, CompuCom and Vendor as co-defendants, include the following language: "Target Corporation, CompuCom Systems, Inc., and each of their respective subsidiaries, affiliates, officers, and employees are included as additional insureds." Limits may be met using a combination of primary and excess coverage. Coverage is provided on an "occurrence" basis.

**7.3. Automobile Liability Insurance.** Automobile liability insurance (including coverage for owned, hired and non-owned vehicles) with minimum limits of not less than $5,000,000 combined single limit per accident. Limits may be met using a combination of primary and excess coverage. Coverage is provided on an "occurrence" basis.

**7.4. Omitted.**

**7.5. Omitted.**

**7.6. Employment Practices Liability.** Employment practices liability covering liabilities from wrongful acts arising from the employment process in an amount not less than $5,000,000 per claim. Coverage is provided on a "claims made" basis.

**7.7. General Insurance Requirements.**

**7.7.1.     Insurer Qualifications.** Vendor shall procure all coverage required under this Section from a company or companies possessing an A.M. Best rating of A-:VII or better. Vendor shall obtain all coverage required under this Section from a company or companies that are authorized to do business under the laws of the state(s) in which Vendor is conducting business related to this SOW.

**7.7.2.     Occurrence Basis.** Except for any coverage required or permitted under this Section to be provided on a "claims-made" or "per claim" basis, all coverage required under this Section must be written on an occurrence basis. For any coverage required or permitted to be provided on a "claims-made" or "per claim" basis, such coverage must remain in effect for a term of not less than three (3) years

© 2019 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.

**CompuCom®**

after termination of this SOW, unless this Section provides otherwise.

**7.7.3.       Vendor Insurance is Primary.** Vendor's insurance shall be primary and shall be required to respond to and pay prior to any other available coverage of Target or CompuCom.

**7.7.4.       Certificate of Insurance.** Vendor shall provide CompuCom with a certificate(s) of insurance evidencing the required coverage concurrently with the execution of this SOW and upon each renewal of such policies and naming Target and CompuCom as an additional insured with regard to Employer's liability, General Liability and Auto Liability. Vendor shall ensure that Vendor or the insurer(s) give CompuCom at least thirty (30) days advance written notice of any material change or cancellation of such policies.

**7.7.5. Self-Insurance.** Vendor shall not self-insure its coverage required under this Section without the prior written consent of CompuCom.

**8.       Record Retention and Audit Rights.** Vendor shall secure, retain and make available to CompuCom and its designated representatives all records and supporting documentation sufficient to document all Service and charges for at least two (2) years following expiration of this SOW. During the term of this SOW and for a period of two (2) years after its termination, Vendor shall allow CompuCom and CompuCom's designated representatives to audit, inspect, review and copy ("Audit") all SOW Records during regular business hours. During such Audit(s), Vendor shall provide CompuCom with access to SOW Records and shall provide such assistance as is reasonably requested by CompuCom in connection with an Audit, including without limitation, by providing CompuCom or its agents full access to all required information and facilities, including without limitation, access to hardware, software, personnel, records of charges and other documents and systems controlled by Vendor or Vendor agents, partners, and subcontractors during normal business days  and hours (and at other times for security related inspections or audits) at locations controlled by Vendor or Vendor agents for the sole purpose of performing audits or inspections of the Services as defined. Vendor shall provide access to sufficient space and resources on Vendor's premise to conduct such audit or inspection. Such Audits may extend to Vendor's subcontractors and companies that subcontract or partner with Vendor, whether or not the engagement of such subcontractor(s) is permitted by CompuCom.

**8.1.       Agreement Records.** For purposes of this Attachment, "SOW Records" means all information, including

Vendor systems, arising from or relating to this SOW including

**8.2.** without limitation, (i) relevant business records and records related to the fees charged by Vendor to CompuCom, including time cards and other relevant documentation to support the fees charged by Vendor, (ii) Vendor's systems, and (iii) information reviewed, accessed, transmitted, created or maintained by Vendor under this SOW, including information demonstrating Vendor's compliance with its obligations and responsibilities, and performance of Services hereunder.

**8.3. Audit Results.** If either CompuCom or Target notifies Vendor (whether as result of such an audit or inspection or otherwise) of any material breach or any violation of the law, then Vendor shall promptly correct such violation at Vendor's sole cost.

**8.4. Audits Costs.** CompuCom will pay the cost of any CompuCom-initiated Audit. However, Vendor shall pay the costs of the audit or inspection if charges in excess of 105% of the correct charges are found.

**9.   Governing Law and Venue.** As they pertain to Target, the laws of the State of Minnesota, without regard to Minnesota's choice-of-law principles, govern all matters arising out of or related to this SOW. The parties specifically disclaim the application of the United Nations Convention on Contracts for the International Sale of Goods to the interpretation or enforcement of this Agreement. As it pertains to Target, the exclusive forum and venue for any legal action arising out of or related to this SOW shall be the United States District Court for the District of Minnesota, and the parties submit to the personal jurisdiction of that court. If neither subject matter nor diversity jurisdiction exists in the United States District Court for the District of Minnesota, then the exclusive forum and venue for any such action shall be the courts of the State of Minnesota located in Hennepin County, and the parties submit to the personal jurisdiction of that court.

**10. Reserved.**

**11. Reserved.**

**12. Survival.** All warranties and indemnities survive the termination or expiration of this SOW. In addition, every provision that by its terms is intended to survive termination or expiration of this SOW will do so.

© 2019 CompuCom Systems, Inc.  All Rights Reserved
This document is PROPRIETARY and CONFIDENTIAL and may not be duplicated, redistributed, or displayed to any third party without the express written permission of CompuCom.